JARVIS & LOBDELL *vs.* PECK and others.

An answer to a suit upon a bond and mortgage, that the only consideration for such bond and mortgage was an agreement in restraint of trade, which was void as against public policy, is not sustained by proof that such an agreement formed only a part of the consideration for which the bond and mortgage were given.

A person who is engaged in a particular trade or business may agree to relinquish the same to another, and may lawfully covenant not to carry on the same trade or business in such a manner as materially to interfere with the profits of the one to whom he has sold and transferred his business.

The principle upon which a contract in general restraint of trade is held to be void, as against public policy, is that such a contract deprives the public of the enterprise and skill of one of the parties to the contract, and injures him, without any corresponding benefit to the party contracting for such restriction.

Although the policy of the law does not permit general agreements in restraint of trade, a person who is engaged in a particular business, which he is car-

rying on by means of a secret process which he has discovered, may sell the secret to another, and may lawfully contract with the purchaser that he will not thereafter use that secret in such business without the consent of the purchaser, and will not disclose the secret to others.

In a suit upon a bond and mortgage which upon their face import a good consideration, it is not necessary for the complainant to prove what the real consideration was; but it lies upon the defendant, who attempts to impeach them, to show that they were given without consideration, or that the consideration was illegal.

It seems that if a part of the consideration of a bond for the payment of money is good, and another part of the consideration is illegal by the principles of the common law, as being against public policy, but is not made illegal by statute, the bond is valid.

THIS was an appeal from a decree of the assistant vice February 21. chancellor of the first circuit, in a foreclosure suit. The complainants' bill was filed to obtain satisfaction of the balance due upon a bond and mortgage dated on the 11th of March, 1836, but actually executed three days thereafter, conditioned for the payment to Jarvis & Tremain, the original mortgagees, of the sum of $2000, in February 1835. The bond was executed by the defendants Gunn & Peck, and the mortgage by Peck and wife. The answer of the defendants admitted the execution of the bond and mortgage, but set up as a defence to the suit that the consideration of the bond and mortgage was neither money nor property, but was a bond or agreement executed by the mortgagees to the defendant Gunn and one W. Trimble, on the 14th of March, 1836, in the penalty of $100,000. The condition of that bond, or agreement, which was set out at length in the answer, recited that W. Trimble had been instrumental in making Jarvis & Tremain, the obligors, acquainted with the skill of converting cast iron into malleable iron, and that he and they had been copartners in that business, which partnership had been dissolved by mutual consent, by reason and in consideration whereof Trimble & Gunn had secured to Jarvis & Tremain the $2000 specified in the bond and mortgage above mentioned. And the condition of the bond then stated, that in consideration thereof Jarvis & Tremain were bound not to carry on said business themselves, nor by their agents, in any place what-

ever, nor to work at that business without the consent of Gunn & Trimble or one of them ; and were also bound not to make known the said skill to any other person whatever, either directly or indirectly. It appeared also from the answer, and the proofs, that previous to the 14th of March, 1836, Jarvis & Tremain had been taken into copartnership with Trimble and C. Adams, in the business of converting cast iron into malleable iron, by the use of some secret skill, and had at the time they were so taken into the partnership taken an oath before a magistrate not to disclose to any person the secret skill they should obtain from the copartners, except by a mutual agreement between them ; and that the copartnership was dissolved at the time of giving the bond and mortgage, and the execution of the $100,000 bond or agreement.

The assistant vice chancellor decided that the bond and mortgage were founded upon a good and sufficient consideration, and that the agreement on the part of the mortgagees, executed at the same time, although in general restraint of trade, did not render the bond and mortgage illegal and void ; and a decree was entered accordingly. From that decree the defendants appealed.

*A. Taber*, for the appellants. The consideration of the mortgage is the bond executed by Jarvis & Tremain to Gunn & Trimble, which bond being in restraint of trade generally, is illegal and void, and consequently the mortgage cannot be enforced. (*Mitchell* v. *Reynolds*, 1 *P. Wms.* 181 ; 10 *Mod.* 130, *S. C. Heanlocke* v. *Blacklowe*, 2 *Saund.* 156, *n.* 1. 2 *Saund. on Pl. & Ev.* 577. *Chesman and wife* v. *Nainsly*, 2 *Stra.* 739 ; 2 *Ld. Raym.* 1456, *S. C.* ; 2 *Bro. P. C.* 349, *S. C. Davis* v. *Mason*, 5 *T. R.* 118. *Bunn* v. *Gay*, 4 *East*, 190. *Gale* v. *Reed*, 8 *East*, 80. *Hardy* v. *Martin*, 1 *Bro. C. C.* 419, *n.* *Willes*, 384. *The Master, Wardens and Society of the Mystery of Gunsmiths of the City of London* v. *Fell, Cas. Temp. Hard.* 53. 2 *Esp. N. P.* 15, 16. *Thompson* v. *Harvey, Show.* 2. *Colgate* v. *Bachelor, Cro. Eliz.* 872. 2 *Cro.* 596. *Allen*, 67. *Moore*, 115,

242. 2 *Bulst.* 136.· *Com. Dig. tit. Trade, p.* 3. *Com. on Cont. pt.* 2, *ch.* 10 ; *pt.* 1, *ch.* 4. *Hearn* v. *Griffin,* 2 *Chit. Rep.* 407. 7 *Petersd. Abr.* 83. 8 *Mass. Rep.* 223. 9 *Idem,* 522. *Pierce* v. *Woodward,* 6 *Pick.* 206. *Petre* v. *Thomas,* 4 *Bibb,* 486. *Noble* v. *Bates,* 7 *Cowen,* 307. *Smith* v. *Smith,* 4 *Wend.* 468. *Pennington* v. *Townsend,* 7 *Idem,* 276. 14 *John.* 273. *Thalmer* v. *Brinkerhoof,* 20 *Idem,* 397. *Bank of U. S.* v. *Owen,* 2 *Pet.* 527. *Chappel* v. *Brockway,* 21 *Wend.* 157. *Ross* v. *Sadgbeer, Idem,* 166.)

The complainants are seeking the aid of this court to enforce the performance of an illegal and void contract, to wit, the foreclosure of the mortgage and the collection of the bond accompanying it. This cannot be done either at law or in equity. Jarvis is *particeps criminis,* and Lobdell, the assignee of Tremain, is in no better situation than his assignor. (*Com. on Cont. pt.* 1, *ch.* 4, *p.* 53. *Collins* v. *Blanton,* 2 *Wils.* 341, 347. 1 *P. Wms.* 156, 220. *Hunt* v. *Knickerbacker,* 5 *John.* 324. *Pennington* v. *Townsend,* 7 *Wend.* 276. *Bank of the U. S.* v. *Owen,* 2 *Peters,* 527. *De Groot* v. *Van Deusen,* 17 *Wend.* 170. 1 *Com. on Cont.* 30. *Holman* v. *Johnson, Cowp.* 343. *Belding* v. *Pitkin,* 2 *Caines,* 149. *Woodworth* v. *Jones,* 2 *John. Cas.* 417. *Whitaker* v. *Cone, Idem,* 58.) Lobdell is not protected by the assignment against the illegality of the consideration of the mortgage. He took it subject to all the equities existing between the original parties to it, whether he had notice or not. (*Estep* v. *Watkins, Bland's Ch. R.* 486. *Murray* v. *Lylburn,* 2 *John. Ch.* 441. *Livingston* v. *Dean, Idem,* 479. *Clute* v. *Robinson,* 2 *John.* 595. *Murray* v. *Governeur,* 2 *John. Cas.* 438. *Webster* v. *Wise,* 1 *Paige,* 391. *Covel* v. *Tradesman's Bank, Idem,* 131. *Peacock* v. *Rhodes, Doug.* 636. *Root* v. *French,* 13 *Wend.* 575. *Sugd. on Vend.* 482. *Whitfield* v. *Faussett,* 1 *Ves.* 387. *George* v. *Milbanke,* 9 *Ves. jun.* 190.) The bond and mortgage were given as a consideration for the covenant not to work at the business, and not to disclose the secret. The first part of the consideration is confessedly bad ; we insist the second part is equally so as against public policy. But if we are wrong

in this, the court cannot say how much or what portion of the $2000 was for the first, and what portion for the second part of the covenant. It would be unjust to place it all upon the latter part, and there is no rule by which the court can apportion it. The conclusion to which the vice chancellor arrived, would open the door to a fraud on the law in all cases. (5 *Taunt.* 727. *Colshil's case*, 3 *Coke*, 82. 6 *Cowen*, 481. 3 *Bibb*, 497. 5 *Serg. & Rawle*, 139. 4 *Rawle*, 187.)

*C. Stevens*, for the respondents. The bond and mortgage are good and valid securities, and are a legal lien upon the premises mentioned in the mortgage. The matter set up in the defendant's answer by way of defence is not sufficient to defeat the bond and mortgage, or in any manner to affect the consideration. There is no proof that the bond and mortgage are the same mentioned in the bond from Jarvis & Tremain to Trimble & Gunn; nor is there any proof that the covenants in the bond of Jarvis & Tremain were the sole consideration for the bond and mortgage. But if the covenants in the bond of Jarvis & Tremain were the sole consideration for the bond and mortgage, the bond and mortgage are valid, as these covenants are good. There is at least one good and valid covenant in the bond of Jarvis & Tremain, to wit, the covenant " not to disclose the secret," &c. which was and is a consideration to sustain the mortgage. (*Morris* v. *Coleman*, 18 *Ves.* 437. *Bryson* v. *Whitehead*, 1 *Sim. & Stu.* 74. *Green et al.* v. *Folsham*, *Idem*, 398. *Stra.* 739. 2 *Ld. Raym.* 1456. *Folkes* v. *Dominique*, 2 *Stra.* 1137. 3 *Law Lib.* 254, 568, *marg. as to covenants void at common law*.) The bond shows a sufficient consideration for giving the bond and mortgage, independent of the covenant, to wit, the dissolution of the partnership and the withdrawal of Jarvis & Tremain from the firm. The complainants are only required to show a valuable consideration for the mortgage, not an adequate consideration. (*Huson* v. *Pitman*, 2 *Hayw.* 332.)

THE CHANCELLOR. I think the defendants failed in this case in proving the defence set up in their answer. The substance of the defence is that the only consideration for the bond and mortgage was an illegal agreement, in restraint of trade; and that such agreement being void as against public policy there was in fact no consideration whatever for the bond and mortgage. Upon such an answer, if the defendants fail in proving that the $100,000 bond was the sole consideration, I do not think they are at liberty to insist that their proofs make out a defence of a different character ; to wit, that the bond and mortgage were void because they were given in part to carry into effect an agreement which was against public policy. Independent of this formal objection to the manner in which that question is brought before the court in this case, however, I think there was no illegality or want of consideration ; and that the principles upon which certain agreements in restraint of trade are held to be void, as being against public policy, do not apply to such a case as this was.

It is perfectly well settled that a man engaged in a particular trade or business may agree to relinquish the same to another ; and he may lawfully covenant not to carry on the same trade or business in such a manner as materially to interfere with the business or profits of the one to whom he has sold out. (*Nobles* v. *Bates*, 7 *Cow. Rep.* 307. *Perkins* v. *Lyman*, 9 *Mass. Rep.* 522. *Hayward* v. *Young*, 2 *Chit. Rep.* 407. *Davis* v. *Mason*, 5 *Term Rep.* 118. *Mitchell* v. *Reynolds*, 1 *P. Wms. Rep.* 181.) In delivering the opinion of the supreme court, in the case of *Chappel* v. *Brockway*, (21 *Wend. Rep.* 159,) Mr. Justice Bronton states the true reason why contracts in general retraint of trade are repudiated as contrary to public policy ; which is that they deprive the public of the enterprise and skill of one of the parties, and injure him, without any corresponding benefit to the party contracting for such restriction. The contract injures one party without benefitting the other.

But in the case under consideration it is very evident the

1843.

Jarvis
v.
Peck.

parties contracted upon the basis that the parties to whom the $100,000 bond was given had purchased out the share or interest of Jarvis & Tremain in the secret, which before belonged to the copartnership, of converting cast iron into malleable iron by some process which was known only to themselves. And the business which the agreement intended to restrain the mortgagees from carrying on, was that of converting cast iron into malleable, as it had previously been done by the copartnership, by means of this secret process. But to carry into effect the intention of the parties without disclosing the secret to the world, the language of the bond necessarily must be made general. Such an agreement was upheld by Sir John Leach in the case of *Bryson* v. *Whitehead*, (1 *Sim. & Stu. Rep.* 74.) And a specific performance of the agreement was there decreed, although it contained a general restriction, as in this case, that the complainant would not carry on the business in which the secret was used; and that the complainant would also procure another person to enter into a similar engagement with the defendant. His honor in that case says, "Although the policy of the law will not permit a general restraint of trade, yet a trader may sell a secret of business and restrain himself generally from using that secret."

Here it does not distinctly appear what the real consideration of the $2,000 bond and mortgage was, or how the defendant Gunn was to be benefitted by the dissolution of the copartnership which had been previously carried on by means of this secret. But enough appears to show that the giving of the $100,000 bond was not the only consideration, if indeed it formed any part of the consideration of the bond and mortgage. The condition of the bond and mortgage to Gunn & Trimble recites that the copartnership in which Jarvis & Tremain had been interested, with Trimble & Adams, had been dissolved by mutual consent; by reason and in consideration whereof, Trimble & Gunn had secured them the $2,000. It may therefore be fairly inferred that the relinquishment of the interest of the mortgagees in the good will of the business which was carried

on by means of this secret process, was the true consideration for which the bond and mortgage was given ; and that by some arrangement between Gunn & Trimble, the former was to be thereafter substituted in the place of Jarvis & Tremain in the carrying on of the business, by means of the secret, either at the same place or elsewhere. It is not necessary, however, for the complainants to show what the real consideration of the bond and mortgage was. For as they upon their face import a good consideration, the defendants hold the affirmative of showing that they were given without any valid consideration.

Assuming then that the relinquishment of the interest of the mortgagees in this business, and in the secret which constituted a part of that interest, to Trimble & Gunn, to have formed a material part of the consideration of the bond and mortgage, I think the agreement of the mortgagees that they would give to Trimble & Gunn the full benefit of the secret which they had purchased, by refraining from engaging in the business themselves or as the agents or workmen of others, and by keeping the secret by which the business was carried on from the knowledge of others, did not vitiate the bond and mortgage ; even if a stipulation to give the $100,000 bond formed a part of the same agreement. For, as I have before observed, the object of the parties was not to restrain trade, but to insure to the purchasers of an interest in the secret the full benefit of their purchase. And this could not be done by restricting Jarvis & Tremain from carrying on the particular business, in which the secret process was used, within certain specified limits merely. For if the secret was valuable, the purchasers thereof were interested in controlling its use at other places than that in which they should think proper to carry on the business in person. And though they could not carry on the business themselves in every part of the state, they could sell out their secret to others and give to the purchasers thereof the right to use it within particular limits. This, however, could not be done with the same profit to themselves if the restriction upon Jarvis & Tremain was

limited to a particular locality. The agreement therefore was not one which imposed an onerous restriction upon Jarvis & Tremain that was of no benefit to the other parties.

Having arrived at the conclusion that the agreement, on the part of Jarvis & Tremain, to keep the secret and not to use it in the business of converting cast iron into malleable iron without the consent of Trimble & Gunn, was a valid agreement, it is not necessary to consider the question upon which the assistant vice chancellor has placed his decision. It will be seen, however, by a reference to the case of *Bunn* v. *Guy*, as reported by Mr. Smith, that Lord Ellenborough takes that ground distinctly; although it is not stated in the report of that case by East. His lordship, at the conclusion of the argument, said, " Here is a bond for the payment of money, and unless the consideration is bad by statute, the bond is good if any part of the consideration is good." (*See* 1 *Smith's Rep.* 11.) A similar opinion was expressed by him in the case of *Newman* v. *Newman*, (4 *Maule & Sel. Rep.* 70. *See also Pigot's case*, 11 *Coke, Thomas & Fraser's ed.*, 27, *b. and the cases cited in note C.*)

The conclusion at which I have come in this case is, that the bond and mortgage were founded upon a good and sufficient consideration, and that the appellants had no valid defence to this bill of foreclosure. The decree appealed from must therefore be affirmed with costs.