O. & W. THUM CO. *v.* TLOCZYNSKI.

1. TRADE SECRETS—DISCLOSURE BY EMPLOYÉ—INJUNCTION.

One who is given employment by a manufacturer whose processes of manufacture, methods, and machinery are kept secret from the public, upon the agreement, express or implied, that he will not use the information imparted to him in the course of his employment for his own benefit or communicate it to strangers, will be enjoined from breaking his agreement.

2. SAME—CONDITIONS OF EMPLOYMENT—CONTRACTS IN RESTRAINT OF TRADE.

An agreement by an employé, as a condition of the employment contract, that he will disclose none of the secrets of the business and machinery about which he is to be employed, is not an agreement in restraint of trade.

Appeal from Kent; Adsit, J. Submitted April 14 1897. Decided September 14, 1897.

Bill by the O. & W. Thum Company against Appollonious A. Tloczynski to enjoin the communication of trade secrets. From a decree for complainant, defendant appeals. Affirmed.

*Earle & Hyde* (*Butterfield & Keeney*, of counsel), for complainant.

*C. L. Fitch* (*Frederick W. Stevens*, of counsel), for defendant.

MOORE, J. The complainant is the successor of the firm of O. & W. Thum, who were manufacturers of sticky fly paper. It filed a bill of complaint to restrain defendant from communicating to others the secret processes and methods, and the knowledge of secret machinery, which were learned by him while in the employ of O. & W. Thum. The court below granted an injunction, as prayed in the bill of complaint. Defendant appeals.

The testimony is voluminous, and very conflicting. We are satisfied, however, that it establishes, by a very clear proponderance, the following facts: The defendant entered the employ of O. & W. Thum in 1887. They at that time were manufacturing sticky fly paper by machinery and from formulæ known only to themselves. They at that time had but one man and one boy in their employ. The business was carried on in the attic of the house, and in a small building in the back yard. The processes and machinery that were regarded as secret, and of great value to the firm, were used only by the members of the firm. As the business grew, it became necessary to employ more persons, and among others employed was the defendant. Because of the increase in the business and the employment of more persons, other precautions were taken, as the necessity grew for taking them. The public were excluded from the premises. The employés at one machine were not allowed to inspect other machines used in the manufacture, and were not allowed to visit all portions of the premises. Very rigid and careful requirements were made and enforced to guard the formulæ, the processes of manufacture, and knowledge of the machinery used, so that no one could learn them, or either of them, to the detriment of the firm. The business of the firm steadily grew in magnitude, so that when defendant left

its employ, in 1892, about $100,000 was invested in the business, and a large number of persons were given employment. Shortly before this bill was filed, complainant received the following letter:

"Grand Rapids, Mich., Jan. 7, 1893.
"The O. & W. Thum Co., City.
"Mr. Wm. Thum,
"*Dear Sir:* It is about 15 months since I left your shops, and during that time have been more or less troubled by outside people in regards to fly paper and its manipulations at your works; not so much so until lately, when there were representatives from two large firms, one from Ohio, which was represented by the president and their attorney, which I looked up in R. G. Dun's, who quote them at $500,000, who were here for one week, and were directed by some people here in the city to me. They told me that they had sufficient artillery to put the paper on the market, but were a little short on cavalry in its workings; also told me that they were ready at any time to make arrangements,—that is, as soon as I say yes. I can show letters from the above firm and others. I have not said a single word of its manufacture since I left you, but do not think it's my place to keep mum unless you desire it. Awaiting your early reply, I remain,
"Yours truly,
"A. A. Tloczynski."

It very soon became evident that defendant was negotiating with others to engage in the manufacture of the same product the complainant was making, and this bill was filed.

The terms of employment were not reduced to writing, and there is a sharp conflict of testimony between the defendant and O. and W. Thum as to the terms of his employment, so that it becomes necessary to consider carefully all the testimony in the case to arrive at the truth. One cannot read all the testimony, in the light of the facts and circumstances surrounding the condition of the business at the commencement of the defendant's employment, and its subsequent development and growth, without coming to the conclusion that the defendant and his employers regarded his relation to them as a confidential

one, and contemplated that he should not disclose or make improper use of the secrets of the business. The conclusion is irresistible that defendant would not have been employed, and that information which was imparted to him would not have been conveyed, if it had been understood that he might sever his relations with his employers at any time, and sell the valuable information which had been imparted to him whenever he could find a market. The inception, growth, and development of the business; the manner in which it was conducted; the care taken to exclude the public from means of obtaining knowledge of the processes; the fact that, when new machinery was to be constructed, part of it was got at one place, and part at another, so that no person, outside of the members of the firm and their immediate employés, should see a completed machine in operation; the fact that employés in one department of the manufactory were not allowed in other departments; and the care which was taken to prevent employés from obtaining knowledge of any branch of the business except that in which the employé was immediately engaged, of all of which the defendant had knowledge,—all indicate conclusively that the business and processes were secret, and that no one knew that fact better than the defendant. We think it clearly established by the testimony that the employment was upon the agreement that defendant would not use the information imparted to him to the harm of his employers.

In our view, the only important question involved in the case is whether an employé, when his employment terminates, may make use of secrets confided to him by his employer, necessary to be confided to him in the conduct of the business, when it is understood and agreed that he shall not make use of the secret knowledge so imparted to the detriment of the employer, and, if he attempts so to do, may he be restrained by writ of injunction?

It is said by counsel that the remedy by injunction will not be granted in such a case as this, where, from the nature of the subject, there could be no decree for a spe-

cific performance; citing *Newbery* v. *James*, 2 Mer. 446; *Williams* v. *Williams*, 3 Mer. 157; *Kimberley* v. *Jennings*, 6 Sim. 340.   It is also said that a decree for a specific performance will not be granted where the court has not the means of seeing that its decree shall be carried out; citing *Voorhies* v. *Frisbie*, 25 Mich. 482 (12 Am. Rep. 291); *Blanchard* v. *Railroad Co.*, 31 Mich. 43 (18 Am. Rep. 142); *Bumpus* v. *Bumpus*, 53 Mich. 346.   An examination of the Michigan cases cited shows that in those cases the court was asked to decree the performance of an affirmative act, where the agreement was of an indefinite and uncertain character, instead of being asked to enforce a definite agreement not to do an act.   As to the other cases, if they tend to sustain the contention of the defendant, they are contrary to the great weight of authority.   Is it not true that, if one discovers a process of manufacture or an invention which is of use to individuals and the community, he has a property right in it, and that an agreement which must be respected may be made in relation to keeping the process of manufacture or the invention a secret between the discoverer or owner and an employé, which agreement is made one of the conditions of the employment ?   It has been said by a very able justice :

"If one invents or discovers and keeps secret a process of manufacture, whether a proper subject for a patent or not, he has not, indeed, an exclusive right to it as against the public, or against those who, in good faith, acquire knowledge of it; but he has a property in it which a court of chancery will protect against one who, in violation of contract and breach of confidence, undertakes to apply it to his own use, or to disclose it to third persons." *Peabody* v. *Norfolk*, 98 Mass. 452 (96 Am. Dec. 664).

And, again, Mr. Justice Gray, who delivers the opinion, says :

"In this court it is settled that a secret art is a legal subject of property, and that a bond for a conveyance of the exclusive right to it is not open to the objection of being in restraint of trade, but may be enforced by action

at law, and requires the obligor not to divulge the secret to any other person. *Vickery* v. *Welch*, 19 Pick. 523; *Taylor* v. *Blanchard*, 13 Allen, 373, 374 (90 Am. Dec. 203). In *Jarvis* v. *Peck*, 10 Paige, 118, such a bond was held valid in equity."

In *Salomon* v. *Hertz*, 40 N. J. Eq. 400, the court adopts the language of Justice Gray, and holds that there is a property in a secret process of manufacture. See, also, *Simmons Hardware Co.* v. *Waibel*, 1 S. Dak. 488 (36 Am. St. Rep. 755).

A recent and instructive case is that of *Eastman Kodak Co.* v. *Reichenbach*, 79 Hun, 183, from which we quote:

"To briefly summarize, then, the established facts of this case, it appears that the plaintiff is the owner of valuable trade secrets, which were either discovered by one or more of the defendants, or necessarily disclosed to them, while occupying a confidential relation towards the plaintiff; that, as to such trade secrets as were discovered by either Reichenbach or Passavant, they have undertaken and agreed to give plaintiff the exclusive property in and control over the same; and that, in violation of this agreement, they are now proposing to make use of them, or some of them, in such a manner as to materially injure the plaintiff's business. With these facts established, the application of the legal principles which must govern the disposition of the case does not appear to be a very formidable undertaking. It may be safely assumed at the outset, I think, that whatever remedy plaintiff may have does not reside in a court of law. The very nature of the case, the peculiar character of the injury liable to be inflicted, and the incalculable damages which may possibly result, all show most conclusively that legal relief is totally inadequate for plaintiff's protection, and that its only resort must be to a court of equity. The learned counsel for defendants has contended, with all the adroitness and skill at his command, which is but another way of saying that such contention has been put forth with all possible adroitness and skill, that this case is not one of which a court of equity can take jurisdiction; and several authorities of both English and American courts are cited in support of this claim. I am constrained, however, to hold that the weight of authority is opposed to his view of the law. The question presented is an interesting

one, and would justify a somewhat analytical review of the cases which bear upon either aspect of it did time permit; but, for the purposes of this adjudication, it will be necessary to advert to such only as are deemed conclusive upon this court.

"In *Morison* v. *Moat,* 9 Hare, 241, which is an English case, it was held that an injunction would issue to restrain the use of a secret in the compounding of a medicine not being the subject of a patent, and to restrain the sale of such medicine by a party who acquired knowledge of the secret in violation of the contract of the party by whom it was communicated, and in breach of trust and confidence. An appeal was taken from the decision of the vice chancellor, and in 1852 the case was affirmed by the court of chancery, and it was there held that 'there is no doubt whatever that where a party who has a secret in a trade employs persons under contract, express or implied, or under duty, express or implied, those persons cannot gain the knowledge of that secret, and then set it up against their employer.' *Morison* v. *Moat,* 21 Law J. Ch. (N. S.) 248.

"In 1868 the supreme court of Massachusetts recognized and followed the authority of *Morison* v. *Moat,* and in the opinion of Gray, J., the law is thus stated: If a party 'invents or discovers and keeps secret a process of manufacture, whether a proper subject for a patent or not, he has not, indeed, an exclusive right to it as against the public, or against those who, in good faith, acquire a knowledge of it; but he has a property in it which a court of chancery will protect against one who, in violation of contract and breach of confidence, undertakes to apply it to his own use, or to disclose it to third persons. The jurisdiction in equity to interfere by injunction to prevent such a breach of trust when the injury would be irreparable, and the remedy at law inadequate, is well established by authority.' *Peabody* v. *Norfolk,* 98 Mass. 452 (96 Am. Dec. 664). The language above quoted was cited with approval in *Salomon* v. *Hertz,* 40 N. J. Eq. 400, and it is almost identical with that employed by elementary writers of recognized standing in discussing the same question. Judge Story says: 'Courts of equity will restrain a party from making a disclosure of secrets communicated to him in the course of a confidential employment, and it matters not in such cases whether the secrets be secrets of trade, or secrets of title, or any other

secrets of the party important to his interests.' 2 Story, Eq. Jur. § 952.  See, also, 1 High, Inj. (2d Ed.) 15.

"The same doctrine has obtained in this State for at least half a century, and it has been enunciated by a line of decisions which, with a single exception is unbroken. *Jarvis* v. *Peck*, 10 Paige, 118; *Hammer* v. *Barnes*, 26 How. Prac. 174; *Champlin* v. *Stoddart*, 30 Hun, 300; *Tabor* v. *Hoffman*, 118 N. Y. 30 (16 Am. St. Rep. 740). The *Champlin Case* was decided by the general term of this department, Smith, P. J., writing the opinion, in the course of which he takes occasion to say that 'a secret of trade is fully recognized in equity as property, the disclosure of which will be restrained by injunction.' By a careful reading of the various decisions upon this subject, it will be seen that some are made to depend upon a breach of an express contract between the parties, while others proceed upon the theory that, where a confidential relation exists between two or more parties engaged in a business venture, the law raises an implied contract between them that the employé will not divulge any trade secrets imparted to him or discovered by him in the course of his employment, and that a disclosure of such secrets, thus acquired, is a breach of trust and a violation of good morals, to prevent which a court of equity should intervene.  It may also be observed in this connection that the word 'property,' as applied to trade secrets and inventions, has its limitation; for it is undoubtedly true that when an article manufactured by some secret process, which is not the subject of a patent, is thrown upon the market, the whole world is at liberty to discover, if it can, by any fair means, what that process is, and, when discovery is thus made, to employ it in the manufacture of similar articles.  In such case the manufacturer's or inventor's property in his process is gone.  But the authorities all hold that, while knowledge obtained in this manner is perfectly legitimate, that which is obtained by any breach of confidence cannot be sanctioned; and this distinction is quite forcibly presented in a recent decision of the court of appeals, to which the attention of this court has been directed by the supplemental brief of defendants.  Judge Landon, in his opinion, speaking of the plaintiff's claim, says: 'His case is unlike those in which the injunctive process of the court is sought to restrain the disclosure of a secret or the publication of a letter which may prove injurious to business or character.'

*Bristol* v. *Equitable Life Assurance Society*, 132 N. Y. 264, 267 (28 Am. St. Rep. 568).

"But, without multiplying citations or prolonging consideration of the legal aspect of this case, it may be said, by way of conclusion, that the principle contended for by the plaintiff is not only abundantly supported by authority, but is likewise founded on good common sense, and is peculiarly applicable to the case in hand.   Here is a party which, by the expenditure of vast sums of money and the exercise of much skill and ingenuity, has built up a large and prosperous business, the capital of which consists largely in certain inventions and discoveries made by its officers, servants, and agents.   The world at large knows nothing of these inventions and discoveries, because they are locked within the brain of those who conceived them. The defendants, who have been largely instrumental in perfecting them, while under both an express and implied contract to give the plaintiff the benefit of their inventive genius, propose now to disregard their legal and moral obligations by creating a new establishment, where these inventions and discoveries may be employed to plaintiff's serious injury.   This is not legitimate competition, which it is always the policy of the law to foster and encourage, but it is *contra bonos mores,* and constitutes a breach of trust, which a court of law, and much less a court of equity, should not tolerate."

See, also, *Fralich* v. *Despar*, 165 Pa. St. 24.

It is argued in this case that there is no express contract shown, and that an implied contract is not such a one as will be enforced.   We think the testimony discloses very clearly an express agreement between the employer and the employed; but, if it may be stated that the only agreement is an implied one, growing out of oral statements taken in connection with the facts and circumstances surrounding the business, the parties, and their acts, still, if it is clearly established by all that was said and done that the secrets confided to the defendant were not to be disclosed by him to others, and were not to be used by him except when he was in the employment of those who imparted to him the secret, or their legal representatives, and that was one of the conditions of his employment, we do not think it would make any difference

in the principle involved. The knowledge came to him in the course of a confidential employment, relying upon his using the knowledge only for the benefit of the employer. It is said by an eminent writer:

"On the whole, the doctrine may be generally stated that wherever confidence is reposed, and one party has it in his power, in a secret manner, for his own advantage, to sacrifice those interests which he is bound to protect, he will not be permitted to hold any such advantage." 1 Story, Eq. Jur. § 323.

The same authority, when discussing the subject of what cases injunction will be issued in, says:

"Upon similar grounds of irreparable mischief, courts of equity will restrain a party from making a disclosure of secrets communicated to him in the course of a confidential employment; and it matters not, in such cases, whether the secrets be secrets of trade, or secrets of title, or any other secrets of the party important to his interests. Thus a party has been restrained from using the secret of compounding a medicine not protected by patent, when it appeared that the secret was imparted to him, to his own knowledge, in breach of faith or contract on the part of the person so communicating it." 2 Story, Eq. Jur. § 952, and many cases there cited. 10 Am. & Eng. Enc. Law, 949; High, Inj. § 19; *Davies* v. *Clough*, 8 Sim. 262; *Williams* v. *Assurance Co.*, 23 Beav. 338; *Morison* v. *Moat*, 9 Hare, 241; *Yovatt* v. *Winyard*, 1 Jac. & W. 394; *Tipping* v. *Clarke*, 2 Hare, 393; *Peabody* v. *Norfolk*, 98 Mass. 452 (96 Am. Dec. 664); *Champlin* v. *Stoddart*, 30 Hun, 300; *Salomon* v. *Hertz*, 40 N. J. Eq. 400.

The case of *Little* v. *Gallus*, (Sup.) 38 N. Y. Supp. 487, is against the contention of the defendant. In that case the plaintiff was a maker of typewriter ribbons by secret processes and formulæ. The defendants entered his employ when they were minors. The court says:

"It seems, therefore, too plain for controversy that the plaintiff was the owner of a process or invention which possessed great value, and which he had secured at the cost of much time, trouble, and expense; that the defendants, Gallus and Bostwick, occupying a confidential relation towards the plaintiff, gained a knowledge of the

processes and formulæ employed by him in conducting his business; that they well understood the nature of the business, their relations to it, and the care which was used to keep the same secret; and that, notwithstanding the knowledge thus obtained, and in violation of the faith and confidence reposed in them, they surreptitiously made *memoranda* of these formulæ, and are now using the same, as well as all the other knowledge obtained while in the plaintiff's service, to start and operate a rival establishment. The only question, therefore, to be determined upon this state of facts, is whether or not they shall be permitted to carry out their intentions. It is contended by the plaintiff that his case is brought directly within the rule laid down in that of *Eastman Kodak Co.* v. *Reichenbach*, 79 Hun, 183, recently decided by the general term in the Fifth department; and the defendants, while conceding that the law of the case is there correctly stated, insist that the facts do not warrant its application here. We find ourselves unable to concur in the view thus taken, and which was carefully elaborated upon the argument by the learned counsel for the defendants. The facts of this case differ somewhat from those of the *Reichenbach Case*, in that there was no written agreement entered into between these parties by which the employés undertook to give to their employers exclusive right in or control over any inventions discovered by or disclosed to the former; but we are unable to see how this strengthens the defendants' contention. In the case cited there happens to be an express contract, but, nevertheless, it is asserted in the opinion of the court, and such is unquestionably the correct rule, that the law raises an implied contract that an employé who occupies a confidential relation towards his employer will not divulge any trade secrets imparted to him or discovered by him in the course of his employment; and we do not see why the defendants, Gallus and Bostwick, are not under just as strong an obligation to observe and keep sacred the trust reposed in them as they would be had they reduced the contract which the law implies to writing. Nor does the fact that they entered the plaintiff's service while minors, and at first performed duties comparatively unimportant in their character, relieve them from a faithful observance of their obligation. Gallus, at least, was ultimately advanced to a position of great responsibility, and both of them had attained their majority before attempting to take improper advantage of the knowledge imparted to them while in

the plaintiff's employ, and their present experiments are not in the direction of legitimate competition, but involve a breach of trust which we think the court should prevent." *Tabor* v. *Hoffman*, 118 N. Y. 30 (16 Am. St. Rep. 740); *Tuck* v. *Priester*, 19 Q. B. Div. 629; *Pollard* v. *Photographic Co.*, 40 Ch. Div. 345.

It is the contention of the defendant that the contract sought to be enforced is void as against public policy, because it is in restraint of trade; citing *Richardson* v. *Buhl*, 77 Mich. 632; *Western Wooden-Ware Ass'n* v. *Starkey*, 84 Mich. 76 (22 Am. St. Rep. 686). These cases are not in point. They are cases where the purpose of the contract was to create a monopoly, by providing by contract that established industries should cease to do business, which, of course, is unlawful; but that is not the purpose of the contract under consideration. Here processes and machinery have been invented which the owners believe would be of great value to them if they could be used upon a large scale. To use them upon a large scale requires the employment of a number of persons, to some of whom some of the secrets of the business and the machinery must be disclosed. If these secrets were disclosed to others, who might use them to establish a business of like character, they would cease to be valuable to the owner. Is there anything unreasonable in enforcing an agreement that such secrets shall not be disclosed by the employé? It has been repeatedly held that contracts for the exclusive use of a secret art are not in restraint of trade, for the public has no right to the secret. See *Taylor* v. *Blanchard*, 13 Allen, 373 (90 Am. Dec. 203), and cases cited; *Leather Cloth Co.* v. *Lorsont*, L. R. 9 Eq. 345. We cannot see how it can be against public interest to allow an employer to make such conditions of employment with his employés as will give him the fullest protection to his property right in his process or invention, and at the same time enable him to employ a great many employés in its production. To enable one to do this would be a benefit to the public in

many ways.   It would secure employment to more persons than would otherwise be employed, and a larger output would be made of a useful article.   The evidence discloses that it does not require a man of special skill to do the work done by defendant when in the employ of the predecessors in business of the complainant.   To restrain him from making use of what he has not discovered is not an injustice to him, and does not abridge his right to work along those lines which would not be harmful to those to whom he has sustained a position of confidence. It is to the advantage of both parties that such a contract should be allowed.   By means of it the defendant secured employment which he could not have secured without it, and at the same time his employers were secured against competition which might be ruinous.   *Beal* v: *Chase*, 31 Mich. 490, 531.

The decree of the court below is affirmed, with costs.

The other Justices concurred.