VULCAN DETINNING COMPANY

*v.*

THE AMERICAN CAN COMPANY ct al.

[Filed June 13th, 1904.]

1. In a bill to restrain defendants from utilizing a certain trade secret belonging to complainant, an allegation that complainant was the assignee of the secret under an assignment from a certain partnership, which was the owner of the same, was sufficient, without an allegation showing that either of the partners was the inventor or discoverer of the secret, or an allegation tracing the title of the copartnership back to any inventor or discoverer.

2. A trade secret is assignable, and the assignee is entitled to an injunction restraining those who had been employed by his assignor, having knowledge of the secret, from utilizing the same.

3. Where, in a suit to restrain defendants from utilizing a trade secret belonging to complainant, complainant's bill traced title to the secret to complainant through various assignments, and the date at which the assignment was made to complainant was given as April, 1898, while the date of the assignment to complainant's assignor was fixed at February, 1899, the discrepancy was obviously a mere clerical error.

4. Where one assigned a trade secret, but did not become the owner thereof until subsequently, his assignee took title by estoppel.

5. A bill to restrain defendants from utilizing a trade secret belonging to complainant alleged that defendants utilized all the devices owned and controlled by complainant, including many for which patents had not been applied for, and for which patents have since been granted complainant.—*Held*, that a contention that it appeared that many parts of the process had been published, and that it did not appear which part remained secret, and that for infringements of a patent process relief must be had in the federal courts, was of no merit, the language of the complaint meaning that there were patented as well as unpatented devices, and it not being incumbent on the pleader to separate the one from the other.

6. Where a bill to restrain defendants from utilizing a trade secret belonging to complainant alleged that one of the defendants had, by the help of all the other defendants, established and carried on a plant for the utilization of such secret, it was proper to unite all such defendants in the bill.

7. Where one becomes bound by contract or confidence to another not to reveal a trade secret possessed by the other, he cannot, in a suit to restrain him from utilizing such trade secret, set up that complainant had no right to it because it had been obtained honestly by complainant from one who had dishonestly obtained the knowledge from the discoverer.

8. Where, in a suit to restrain defendants from utilizing a trade secret belonging to complainant, it appeared that all of the knowledge of such secret that defendants possessed had been acquired by them as officers and employes of complainant's assignor, but it appeared from an affidavit on behalf of the defendants that affiant was the inventor of the process, and that it was dishonestly procured from him by complainant's assignor, a preliminary injunction will not be granted, but merely a limited one restraining defendants from communicating any part of the secret to any person, and from employing any person in the utilization of the secret other than those employed at the time.

On demurrer to the bill and upon a rule to show cause why an injunction should not issue restraining the defendants from utilizing a trade secret.

The bill sets out that the Electro Tinfabriek, a foreign co-partnership, was in 1898 the owner of a secret process for de-tinning tin scrap; that on February 19th, 1899, the Tinfabriek assigned the secret process to A. Kerns & Company and their assigns, giving them a statement in writing of such secret process and of the manner of erecting plants for its utilization; that Kerns & Company, on April 23d, 1898, assigned the said process to the Vulcan Metal Refining Company of New Jersey, which company erected a plant at Sewaren, New Jersey, under the direction of M. Laenes, a member of said Electro Tin-fabriek; that two of the directors of the Vulcan Metal Re-fining Company and of its executive committee, who negotiated this assignment, were Franz A. Assman and Adolph Kerns; that for the purposes of preserving the secrecy of the process a written statement of it was confided to each of four directors, of whom Franz A. Assman was one; that Assman had opportunities to examine the operations of the complainant; that the business of the complainant was successful.

The bill then states that a New Jersey company, known as the Vulcan Western Company, was organized on July 25th,

1899, which company built a plant at Streator, Illinois, of which company Mr. Assman was a director and member of its executive committee until June 1st, 1901; that this company obtained from the Vulcan Metal Refining Company the right to use the secret process, and began business at once; and that the two companies mentioned made improvements in the construction and operation of their plants, which improvements were kept secret from all persons except their trusted employes and officers, including Mr. Assman; that one Philip Bauman was employed as foreman in the Sewaren plant, and as such became familiar with the construction and operation of the plant; that one Gustav Schmaal was employed as chief engineer and one Solomon W. Egbert as foreman, and as such they became acquainted with the process; that in June, 1901, Assman sold his stock in the Vulcan Metal Refining Company and in the Vulcan Western Company to Adolph Kerns, who was then a large stockholder in both companies and is now a large stockholder in the Vulcan Detinning Company, for a large advance over what he paid for it, and that its value arose from the ownership by the two companies of the secret process; that Assman then resigned as director and member of the executive committees of both companies, and, after demand, returned the written statement of the secret process which he had retained possession of until such demand; that in April, 1902, the Vulcan Metal Refining Company and the Vulcan Western Company sold and assigned its plant, machinery and secret processes to David LeRoy and Gustav Eckstein and their assigns, and that, on May 1st, 1902, they sold and assigned their rights in the same to the complainant.

The bill then sets out that in March, 1901, Mr. Assman, while still a director of the two Vulcan companies, caused to be organized a New Jersey company, known as the American Can Company, of which he became director and chairman of its executive committee and practically the head of the company, which position he still retains; that he employed Bauman, Schmaal and Egbert, and erected new plants, one at Paulsboro, New Jersey, and the other at Joliet, Illinois, in the construction and

operation of which plants the secret process was employed. It sets out that the knowledge of Assman, Bauman, Schmaal and Egbert was utilized, and that the new companies utilized all the devices owned and controlled by the complainant, including many for which patents had not yet even been applied for and for which patents have since been granted unto the complainant; that they are now operating said plants under said processes; that the defendant companies are trying to employ the servants of the complainant by large rewards and have sought to acquire from complainant's employes a knowledge of all its methods of constructing and operating under its secret processes.

The bill states that while Egbert was still in the employ of the complainant, he furnished information to Assman and the American Can Company concerning the secret processes, and that Egbert, after agreeing to enter into the service of the can company, remained with the complainant for the purpose of acquiring and communicating to the can company the details of the construction of the plant of the complainant and all improvements therein, and the operation under said secret processes, which information the defendants are now using.

The bill prays for an injunction against Assman and the American Can Company, restraining them from operating the plants at Paulsboro and Joliet and other similar plants by the secret processes, and restraining Bauman, Schmaal and Egbert from performing any further services in said plant, or utilizing or communicating the said secret processes.

*Mr. Robert H. McCarter,* attorney-general, and *Mr. Henry Wollman* (of the New York bar), for the complainant.

*Mr. Thomas M. Day, Mr. P. G. Bartlett* and *Mr. Thomas Thatcher* (of the New York bar), for the defendants.

REED, V. C.

The arguments are directed to two questions—*first,* whether the bill is demurrable; and *second,* if not, then whether upon

the affidavits submitted a preliminary injunction should go.    I will consider the questions in their order.

The first ground assigned by the demurrants is that the bill discloses no ground for equitable relief.

The particular criticism upon the bill under this head is that there is no allegation showing that either of the partners composing the copartnership mentioned as Electro Tinfabriek were the inventors or discoverers of the secret process, or that they trace the title of this copartnership back to any inventor or discoverer.

As a rule, the statement of ownership in a complainant of the property for an injury to which relief is sought is sufficient. *Houghton* v. *Reynolds, 2 Hare 264; Tudor* v. *Cambridge Water Works, 83 Mass. 164; Ely* v. *New Mexico & Ar. Co., 129 U. S. 291.*

I am of the opinion that the statement of the fact that the assignee of the complainant was the owner of the secret processes was a sufficiently certain statement of the fact.

The second criticism of the bill under this head is that, assuming that the Tinfabriek copartnership once owned the secret, no transmission of its right to ask judicial protection of this right passed to the complainant.

The argument in support of this proposition is that a trade secret, from its inherent quality, is non-assignable; otherwise there would be no need for obtaining patents.    It is to be observed, however, that a valid patent protects its owner and his assignees and licensees against everyone infringing it, while a trade secret protects its owners only against those who have learned the secret under a contractual or confidential obligation to preserve the secrecy.

The assignability of a secret process was recognized in *Tode* v. *Gross, 127 N. Y. 480, 485; Thum* v. *Tloczynski, 114 Mich. 149; Fowle* v. *Park, 131 U. S. 88; Simmons Medicine Co.* v. *Simmons, 81 Fed. Rep. 163.* No case has been cited in which the ability of a discoverer of a trade secret to sell the same has been denied.    I think the title of the complainant is sufficiently stated.

Nor do I think the chain of title is broken by the fact that the date of the assignment from Kerns & Company to the Vulcan Metal Refining Company is stated to be April, 1898, while the date of assignment to Kerns & Company is fixed at February, 1899. The last date is obviously a clerical error. But, apart from this, the title which Kerns & Company got would have passed by estoppel to the Vulcan Metal Refining Company. *Kane* v. *Loder, 56 N. J. Eq. (11 Dick.) 268, 274.*

The second ground assigned by the demurrant is that it appears by the bill that many parts of the secret processes had been published, and that it does not appear that any part thereof remained secret. In support of this insistence the following language of the bill is cited, namely: "The defendants utilized all the devices owned and controlled by your orator, including many for which patents had not been applied for and for which patents have since been granted to your orator." The point made is that for infringements of a patented process relief must be sought in a federal court. But the language quoted means that there were unpatented as well as patented devices. It was not incumbent upon the pleader to separate the one from the other by a detailed description of the one class or of both classes.

The third ground assigned is that it does not appear that the causes of action are vested in the complainant.

The objection taken under this head is not rested on the non-assignability of the trade secret already considered. The argument for the demurrant is this, namely, that Bauman, one of the defendants, was employed not by the complainant but by the Vulcan Metal Refining Company, and Schmaal and Egbert, two other defendants, were employed by the Vulcan Western Company; that the right to hold these men to secrecy, if it existed at all, belonged solely to the companies for which these defendants worked, and that the bill shows no assignment of such rights existing in those companies to the complainant. This view differs the question of the assignability of the trade secret from the question of the assignability of the right to preserve the secret, and it distinguishes the latter from the former, so that

the assignability of the secret will not include the right to enforce the preservation of the secrecy. In my judgment this view is not sound. The duty of the employe arising by contract or by confidence reposed in him to preserve the secrets of the business was undoubtedly primarily owed to the employer. The right to enforce this duty of silence was a factor, indeed a most important factor, in estimating the value of the secret. It was a part of the property in the secret. To say that the owner can sell the secret, but the vendor cannot assert this right of the owner and protect the secret from revelation, would in most instances place the assignee at the mercy of the assignor. In equity the contract held by, and the duty owing to, the owner of a trade secret is not merely assignable, but the assignee of the trade secret has a part of the property right transferred—that is, the right to utilize and protect the secret passes to the assignee.

The right of the two companies, by whom the defendants already mentioned were employed, to enjoin them from revealing the secret passed to the complainant.

Lastly, it is objected that the bill is multifarious.

I cannot conceive of an instance in which the propriety of uniting several defendants in a single suit is more conspicuous than this. All of the defendants were directly concerned in a single movement, by which, as the bill charges, Mr. Assman, by the help of each of the other defendants, organized plants and operated them in violation of a duty which each defendant owed to the complainant. The demurrer should be overruled, with leave to file an answer in twenty days.

The next question is whether an injunction should be advised. Mr. Assman, in his answering affidavits, admits that after it was decided by the American Can Company to provide detinning plants, he, in April, 1902, had an interview with Mr. Schmaal, who was not then, but had previously been, employed by the Vulcan Western Company; that Schmaal told him that he could put up and operate a plant for detinning scrap, and he told Schmaal to set up an experimental plant in one of the factories of the American Can Company, and to demonstrate that he could successfully apply his process. Assman says that

Mr. Schmaal set up such a plant, and then the officers of the company determined to build two plants, one at Paulsboro and the other at Joliet, and afterwards they were constructed by Mr. Schmaal, he relying upon his own knowledge. Assman says that he gave no instructions and was not competent to do so and first visited the plants after they were completed.

Mr. Schmaal swears that he built the plants by his own knowledge and not from anything Assman told him, nor from any paper Assman showed him.

The affidavits leave no doubt in my mind that Mr. Schmaal was employed by Mr. Assman, because of the familiarity of the former with the secret processes. As to these two defendants, of which Mr. Assman was and is the head, it is clear that they are using a process concerning which they were under an obligation, springing out of their relations with the Vulcan companies, not to reveal and not to use otherwise than in the service of the Vulcan companies. Mr. Bauman and Mr. Egbert stand upon a different footing, as, according to the answering affidavits, Mr. Bauman sought service from Mr. Schmaal and was employed by him at Paulsboro two months after the works had been in successful operation. Mr. Egbert says that he was employed as contractor to erect the plant at Joliet, and that he did so according to the instructions given and plans furnished by Mr. Assman, and that he never gave any instructions to Assman or Schmaal, or to the can company, respecting the construction or operation of a detinning plant at Streator. He denies having furnished information to Assman or the can company while he was employed at Streator, or that he remained in the employment of the complainant or any other company for the purpose of being enabled to more accurately furnish information from time to time to the can company, as charged in complainant's bill.

There is, however, another phase of the case, appearing in the affidavit of Dr. Goldsmith, who says that he is the original inventor of the detinning process used by the complainant; that he erected a plant and used such process at Essen, in Germany, in 1889. He says that his secret process was procured by fraud

by M. Laenes and two others, who enticed away some employees of Dr. Goldsmith, and that these persons organized the Electro Tinfabriek in Holland, by which copartnership, as already stated, the complainant is empowered to use the secret.

According to Dr. Goldsmith's affidavit, he inspected the defendants' plant at Paulsboro and says that the method of operating that plant is similar to his at Essen.

It does not appear. that Dr. Goldsmith has ever assigned his right to the trade secret to the defendants. It only appears in the affidavit of Mr. Assman that the doctor, upon inspection of the plant at Paulsboro, expressed his satisfaction with it and promised to communicate any improvements he might make, requesting at the same time the can company to give him the benefit of any improvements devised by it.

Assuming the accuracy of these statements, there can be no doubt that a person or company could be authorized by Dr. Goldsmith to install a plant and use the process. The defendants, however, do not occupy this position. The can company did not install its plant by virtue of any authority from Dr. Goldsmith. When they put this plant into operation they knew nothing of such a person as Dr. Goldsmith or of his methods. All the knowledge the officers and managers of the can company possess had came through Mr. Assman and the employe or employes of the Vulcan company. Now, the title to this trade secret, held by the Vulcan company, was, I think, good against everyone but Dr. Goldsmith and his assignee.

A person who became bound to the Vulcan company by contract or by confidence cannot, as against that company, when suing for a breach of such contract or confidence, set up that the Vulcan company had no right to such trade secret, because it had been obtained honestly from owners who had dishonestly obtained the knowledge from the discoverer.

The legal question arising upon this feature of the case, however, is not so clear or well settled as to warrant a preliminary injunction, which would arrest the transaction of all the business of the defendants.

I will, however, allow a limited injunction, restraining all the

defendants from further communicating any part of the trade secret to any person, and from giving any further instructions concerning the processes to any employe, and from employing any person in the transaction of the business involving the use of the trade secret other than those now employed.