RICHARDS v. KLINE.

1. PARTNERSHIP—DISSOLUTION AGREEMENT—COMPETITIVE BUSINESS—TRADE SECRETS—PATENTS.

Partner who sold his interest in business, including good will, but who did not agree not to re-engage in business and who remained in purchaser's employ, could use the knowledge he there acquired in order to build a machine which would compete with his employer's machine in the market, after leaving his employ, unless it infringed upon the latter's design, for which a patent had been applied and was afterward obtained; no other trade secrets being involved.

2. SPECIFIC PERFORMANCE—PARTNERSHIP DISSOLUTION AGREEMENT—COMPETITIVE BUSINESS—PATENTS.

Suit for specific performance of partnership dissolution agreement was properly dismissed, where the only issue presented was whether machine manufactured and sold by defendant in competition with plaintiff's business was infringement on patent obtained by plaintiff, since such issue should be determined in suit brought therefor in proper court.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted April 10, 1931. (Docket No. 68, Calendar No. 35,138.) Decided June 1, 1931.

Bill by J. A. Richards, doing business under the name and style of J. A. Richards Company, against James G. Kline for specific performance of a partnership dissolution agreement. Bill dismissed. Plaintiff appeals. Affirmed.

*Harry C. Howard,* for plaintiff.

*Glenn R. Faling,* for defendant.

SHARPE, J. Prior to March 10, 1922, the plaintiff was engaged in the business of manufacturing machinery for the printing and allied trades at the city of Kalamazoo under the firm name of J. A. Richards Company. On that day he sold a one-third interest in the business, including special tools, patterns, patents, and good will, to the defendant for the sum of $4,000. The business was continued under the same firm name. On July 27, 1927, the partnership was dissolved by written agreement. For a consideration of $4,500 the defendant sold his one-third interest therein, including "the good will of said business, and all other assets of said copartnership," to the plaintiff. He was employed by the plaintiff thereafter until about the middle of January, 1929.

Before the partnership agreement was entered into, the plaintiff had applied for a United States patent on certain improvements pertaining to a circular saw structure which he was then manufacturing, and which the partnership continued to manufacture. Soon after leaving plaintiff's employ, the defendant engaged in business at Comstock, in

Kalamazoo county. He began the manufacture of a machine which plaintiff claims to be an infringement of his patent. Alleging that the defendant had taken certain drawings and tracings appertaining to this machine, plaintiff filed a bill praying for an injunction to restrain their use, and obtained a decree therefor on May 11, 1929.

On July 24, 1929, he filed the bill of complaint herein. In it he set forth the dissolution agreement, and alleged that the defendant is advertising for sale a saw trimmer manufactured by him in violation of the terms of such agreement. In his prayer for relief he asked that defendant—

"be compelled to specific performance of the dissolution contract and also enjoined from advertising the saw trimmer referred to in the advertisement and also benders and cutters,"—

and from selling the same, and that he be awarded such damages as he had sustained by reason thereof.

The answer contained a denial of the material allegations in the bill. While the cause was pending, plaintiff's application for a patent, above referred to, was granted, and the bill was amended to so state.

After hearing the proofs submitted, the trial court in an opinion filed by him said:

"In my opinion the only question involved herein is that of infringement. No other question is presented to which infringement is merely incidental, or the determination of which brings this cause within the jurisdiction of this court,"—

and entered a decree dismissing the bill, from which plaintiff has appealed.

Plaintiff's claim is thus stated by his counsel:

"The theory of the bill in the instant case is that the plaintiff and the defendant together owned all of the assets of the partnership, and that the defendant in the dissolution agreement conveyed to the plaintiff the same assets which he had acquired and which included the good will and the patents; that he was bound by the dissolution agreement not to injure the plaintiff by selling plaintiff's customers machines within the terms of the patent which he had sold; that by the decree in the earlier case he had no lawful right to make use of plaintiff's drawings."

He relies on the holding in *Becher* v. *Contoure Laboratories*, 279 U. S. 388 (49 Sup. Ct. 356), to support his right to the relief prayed for. In that case it appeared that Becher, while in the employ of one Oppenheimer, who had invented a machine, learned all of the facts relative thereto, and, while still in such employ, without the knowledge of Oppenheimer, and in violation of his agreement—

"to keep secret and confidential the information thus obtained and not to use it for the benefit of himself or of any other than Oppenheimer,"—

applied for and obtained a patent on such machine. In an action brought in the State court to compel Becher to deliver to Oppenheimer an assignment of the letters patent and to enjoin him from manufacturing the machine, and from transferring any rights under the patent issued to him, Oppenheimer was granted the relief prayed for. At about the time the judgment was entered, Becher brought suit in the Federal court of the State, setting up his patent, alleging infringement and praying for an injunction. The jurisdiction of the State court which rendered the judgment was assailed, it being in-

sisted that the jurisdiction of the Federal courts is
exclusive in suits arising under the patent laws. In
affirming the judgment of the lower court denying
plaintiff relief, it was said:

"It is plain that that suit had for its cause of
action the breach of a contract or wrongful disre-
gard of confidential relations, both matters inde-
pendent of the patent law, and that the subject-
matter of Oppenheimer's claim was an undisclosed
invention which did not need a patent to protect it
from disclosure by breach of trust. (Citing several
cases.) Oppenheimer's right was independent of
and prior to any arising out of the patent law, and
it seems a strange suggestion that the assertion of
that right can be removed from the cognizance of
the tribunals established to protect it by its oppo-
nent going into the patent office for a later title."

The facts here presented differ widely from those
there considered. In the written agreement dis-
solving the partnership, the defendant sold to plain-
tiff, as before stated, his one-third interest therein,
including "the good will of said business, and all
other assets of said copartnership." It contained
no provision that defendant should not engage in a
competitive business. He had no right to remove
any of the drawings from plaintiff's place of busi-
ness, and his use of them was enjoined by the decree
first rendered. If he has violated its terms, he may
be punished therefor. But neither the agreement
nor the decree in any way prohibited the defendant
from manufacturing a machine for use in the print-
ing business which did not infringe upon the design
for which plaintiff had then applied for a patent.
After the dissolution, defendant was employed by
plaintiff as a superintendent in his shop for about
18 months. That he might, after he left this em-
ployment, use the knowledge he there acquired in

order to build a machine which would compete with plaintiff's in the market seems clear, unless the machine. so built by him infringed upon the design for which plaintiff was then seeking and afterwards obtained a patent. No trade secret was involved except as pertained to the design filed in the patent office. Plaintiff's invention was protected by his application, made before the partnership agreement was entered into. Any knowledge acquired by the defendant during the partnership, or while in plaintiff's employ after the dissolution, which pertained to the design sought to be patented, could not be used by him. But knowledge acquired relative to the manufacture of machines which did not so infringe might certainly be used by him without incurring any liability to the defendant either under the dissolution agreement or otherwise.

This court has held that—

"One who is given employment by a manufacturer whose processes of manufacture, methods, and machinery are kept secret from the public, upon the agreement, express or implied, that he will not use the information imparted to him in the course of his employment. for his own benefit or communicate it to strangers, will be enjoined from breaking his agreement." *O. & W. Thum Co.* v. *Tloczynski,* 114 Mich. 149 (syllabus) (38 L. R. A. 200, 68 Am. St. Rep. 469).

See, also, *Glucol Manfg. Co.* v. *Schulist,* 239 Mich. 70.

But the only secret in the manufacture of plaintiff's machine at the time the partnership agreement was entered into, or during the after employment of the defendant, was in the design, of which plaintiff had theretofore applied for a patent.

The question then resolves itself, as stated by the trial court, into whether the machine now manufactured by the defendant is an infringement of the patent granted to plaintiff. The plaintiff pointed out the respects in which it does infringe, and the defendant was equally positive that it does not. A patent attorney produced by defendant was examined at length as to the points of similarity in the two machines. Apparently in answer to a question put by the court, he said:

"Now, what I desire to show, your honor, is, that although there are admittedly resemblances between the Kline machine and the Richards machine, the resemblances are only of a general nature, and that the specific mechanism of the two machines is quite different, and the difference between the specific mechanism of the Kline machine and the Richards machine is fully as great as the difference between the specified mechanism of the Richards machine and the prior art."

If defendant's machine does not infringe the patent granted plaintiff, he should not be enjoined from manufacturing it, and whether it does or does not must be determined in a suit brought therefor in the proper court to decide such cases.

The decree is affirmed, with costs to defendant.

Butzel, C. J., and Wiest, Clark, McDonald, Potter, North, and Fead, JJ., concurred.