JAMES K. SCHMICK ET AL. v. J. P. BATEMAN.

No. 6636.

1. **Contract—Husband and Wife.**—Contracts made by the husband in the name of the wife which affect only community property, she having no separate estate, are in contemplation of law the contracts of the husband.

2. **Pleading.**—As against a creditor who has attached property conveyed by his debtor to a surety to secure him against loss on his suretyship, and burdened with a trust in regard thereto, such conveyance with possession and right to possession is sufficient to sustain the surety's averment of ownership.

**3. Contract with Surety to Indemnify.**—As against such attaching creditor the surety is entitled to protection for the goods conveyed to indemnify him against loss to the extent of payments made by him as such surety.

APPEAL from Eastland. Tried below before Hon. L. W. Campbell, Special District Judge.

The opinion states the case.

*Wray & Stanley,* for appellants.—1. The plaintiff must recover on the case made by the pleadings, and having alleged ownership must prove it. Willis v. Hudson, 63 Texas, 683, 684; Parker v. Beavers, 19 Texas, 410; Mann v. Falcon, 25 Texas, 276; Lemmon v. Hanley, 28 Texas, 220; Mims v. Mitchell, 1 Texas, 444; Rotan v. Fletcher, 15 Johns., 207; Robson v. Harwell, 6 Ga., 589.

2. Where plaintiff alleges himself to be owner of property sued for or converted, he can not recover upon proof that he held the property as mortgagee or pledgee as against attaching creditors of the owner. Willis v. Hudson, 63 Texas, 683; Mann v. Falcon, 25 Texas, 276.

3. Each of the instruments purported to be and was only the act of A. C. Ramey, and was so understood and intended by all the parties. Story v. Nichols, 22 Texas, 87; Bish. on Con., sec. 1119; Whitney v. Wyman, 101 U. S., 392.

4. Said mortgage was void as to creditors of the Rameys, because it was given upon a stock of merchandise daily exposed for sale in parcels and contemplated a continuation of said business for benefit of the Rameys for an indefinite time. Bank v. Lovenberg, 63 Texas, 506.

5. The property was community property of A. C. and B. R. Ramey, and the wife could transfer no right or interest as against creditors of B. R. Ramey or the community. Rev. Stats., art. 2582; Green v. Ferguson, 62 Texas, 525; Wallace v. Finberg, 46 Texas, 44; Cox v. Miller, 54 Texas, 25.

6. A mortgage given to a surety enures to the benefit of the creditor to whom the surety is bound, and the surety simply holds the property as trustee, subject to adjustment of controversies between the creditor and principal debtor. Jones on Chat. Mort., sec. 512; Sheld. on Sub., secs. 163–166; Troy v. Smith, 33 Ala., 469; Thornton v. Bank, 71 Mo., 222.

7. The Mills Cattle Company, by its compromise and dismissal as to the Rameys and as to Bateman, and the acceptance of the agreement of Bateman to pay $1000, extinguished the mortgage, the bond, and old agreement, and substituted a new agreement, leaving Bateman no interest in the mortgaged property. Jones on Chat. Mort., sec. 511; Brooks v. Ruff, 37 Ala., 371.

*J. C. Calhoun* and *West & McGown,* for appellee. —1. In an action for conversion of the character of the case at bar the allegation of own-

-ership and possession of the property converted is sufficient, all other matters having been properly pleaded, to sustain a judgment in favor of the plaintiff where the evidence goes to show that his title is based on an instrument in the nature of a conditional bill of sale. Thomas v. Chapman, 62 Texas, 194.

2. The mortgage under which Bateman claimed the goods, so far as it sought to protect his interest as a creditor of A. C. Ramey, gave appellee Bateman a superior right as a preferred creditor of the Rameys to the appellant the Martin-Brown Company. Hubby v. Harris, 68 Texas, 95; Watterman v. Silberberg, 67 Texas, 103; Lewy v. Fischl, 65 Texas, 320; Valentine v. Ellis, 65 Texas, 533; Greenleve, Block & Co. v. Blum, 59 Texas, 125.

3. The instrument under which appellee claimed an interest in the goods seized by appellants was sufficiently definite and clear to give a right as a preferred creditor to A. C. Ramey superior to the appellant the Martin-Brown Company. Crow v. Bank, 52 Texas, 363; Boone on Mort., secs. 236, 282, 284, and cases cited.

4. The mortgage under which appellee Bateman claimed the goods was sufficient to bind any interest that B. R. Ramey, the husband of A. C. Ramey, might have in the goods, the same being shown to be community property, and it being further shown that the obligation with the Mills Live Stock Company on which Bateman was a surety was one in fact assumed by B. R. Ramey, the husband. Smith v. Bailey, 66 Texas, 553; Epperson v. Jones, 65 Texas, 425.

5. The mortgage given by the Rameys to appellee to secure him in his liability as their surety is good as against creditors of the Rameys, and the law recognizes the right of such mortgagee to be protected. Rev. Stats., arts. 2292, 2296; Watterman v. Silberberg, 67 Texas, 104; Jackson v. Harby, 65 Texas, 710; 4 Wait's Act. and Def., 555.

STAYTON, CHIEF JUSTICE.—On August 27, 1883, and for some time prior to that date, B. R. Ramey did a mercantile and other business in the name of his wife, A. C. Ramey, and there is no claim that Mrs. Ramey had separate estate. On that date the husband made a contract in the name of his wife, whereby he bound her in terms to sell and deliver to the Mills Cattle Company a certain number of cattle at a fixed price by October 1, 1883. When that contract was executed in the name of the wife by the husband he received in advance $3000, and to secure the cattle company he executed a bond in the sum of $5000 in the name of his wife, on which appellee and others became sureties.

The contract to deliver cattle was not complied with, but the time for delivery was extended, the sureties consenting to this. The time for delivery under this last agreement having expired without compliance with the contract, Bateman sought indemnity against his liability. To give

this, Ramey in the name of his wife executed an instrument through which the stock of merchandise out of which this litigation grew was transferred to Bateman for the express purpose of protecting him against loss on account of his suretyship. It authorized Bateman to take possession of the stock of merchandise, valued at about $1600, and to sell it in the usual course of business, from the proceeds paying necessary expenses, and balance to be deposited in some safe place until an adjustment should be made between the cattle company and Ramey of all matters growing out of the breach of contract to sell and deliver cattle.

Bateman was further empowered to replenish the stock out of proceeds of sale in so far as it was necessary to keep up the business, and it was provided in the event that Bateman should not be relieved from liability as surety for Ramey that he might sell the goods at auction and apply the proceeds so far as necessary to discharge his obligation as surety; but if he was relieved from liability he was to return the unsold stock and proceeds of sale in so far as not expended for purposes contemplated by the instrument.

Under this agreement, which was properly recorded, Bateman took possession of the goods, when a few days afterwards the Martin-Brown Company, to whom Ramey was indebted, brought suit against him and his wife, and therein sued out a writ of attachment, which was placed in the hands of appellant Schmick and by him levied on the goods in the possession of Bateman.

This action was brought by the latter against Martin-Brown Company and the sheriff to recover damages for the seizure and conversion of the goods, which, after attachment, were sold under order of court for about one-third of their value, and the money was applied in satisfaction of the judgment rendered in favor of Martin-Brown Company against Ramey and wife.

After the seizure of the goods the cattle company recovered judgment against all the sureties of Ramey for $4800 except Bateman, who on payment of $1000 was released from further liability to the cattle company. A judgment was rendered in this case in favor of Bateman for the sum paid to relieve himself from liability to the cattle company, less amount received by him from sales of goods while the stock was in his possession.

It was shown that Ramey and wife were insolvent and had left the country. The goods were the community property of Ramey and wife, but there is some claim urged now that the case does not stand as would it had all the contracts to which reference has been made been executed in the name of B. R. Ramey. Although executed in the name of Mrs. Ramey, affecting as they did only community property, the real contracting party must be held to have been B. R. Ramey, although in executing the several contracts he assumed to act as the agent of his wife.

It is claimed that appellee having alleged ownership of the goods was

not entitled to recover on the right proved by him. As against the attaching creditor, the conveyance to appellee with possession and right to possession was sufficient to sustain his averment of ownership. He being lawfully in possession of the goods and entitled to hold that possession adversely to Ramey and wife and all other persons, appellants had no right to deprive him of this, but if they desired to attach the goods should have pursued the course prescribed by the statute. Rev. Stats., arts. 167, 2292; Osborn v. Koenigheim, 57 Texas, 91.

The proposition that all the contracts referred to were only the contracts of Mrs. Ramey, and did not bind her husband or the community property in any manner, is asserted in many forms, but the facts do not call for discussion of such a question. Mrs. Ramey had no power to contract, and the contracts made by her husband in her name must be treated as his contracts.

We see nothing to render the conveyance to Bateman invalid, for he was liable to the cattle company as surety for Ramey in a sum largely in excess of the value of everything conveyed to him as security. That liability he discharged, and the court only permitted him to recover to the extent necessary to indemnify him, although the sum paid by him was less than the value of the goods converted. What claim the cattle company or other sureties might have for the excess in value of the goods is not a question in this case.

The record before us shows no facts to induce the belief that Ramey had any defense whatever against the demand of the cattle company against him and his sureties, and the liability of the latter is fully shown otherwise than through the judgment obtained against them.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered May 20, 1890.