FANNIE L. PITT ET AL. v. MAX ELSER ET AL.

No. 959.

**Married Woman's Separate Estate and Contracts—Coverture—Rescission—Assignment for Benefit of Creditors.**—P., an insolvent merchant, made an assignment for the benefit of his creditors to D., as trustee. Three of them were preferred creditors, the amount of their preferred debts being about $4000, and the total value of the property conveyed being $2750. The deed of assignment authorized D. to sell at private sale or in bulk, for cash. The three preferred creditors authorized D. to deliver the property back to P., to be held by him as their agent; and they also authorized P. to sell the property to Mrs. P., his wife, as and for her separate estate, she to pay $1000 cash, $1000 a little later, when the property should be delivered to her, and $320 at a future date, for which her note was to be taken; and P. assented to this sale. She paid the $1000 cash out of her separate estate, and then declined to carry out the trade, on the ground that she would get no valid title to the goods, and they would not become her separate estate. The creditors then sold the goods to other parties, and Mrs. P. sued to recover the $1000 paid. *Held:*

1. The title to the goods would have vested in Mrs. P. as her separate estate, even though her separate property might not be liable for the $320 note; and therefore her

coverture would not entitle her to rescind the trade and recover back the money paid. Following Ullman v. Jasper, 70 Texas, 446.

2. As the assignor, P., and the preferred creditors whose debts exceeded the total value of the goods, authorized and assented to the sale to Mrs. P., such sale would have been valid to convey the title to her.

3. Mrs. P. having made default in the contract, was not entitled to recover back the $1000 paid.

Appeal from the County Court of Tarrant. Tried below before Hon. W. D. Harris.

The second assignment of error, referred to in the opinion, was as follows: "The court erred in sustaining defendants' exceptions to that portion of plaintiffs' petition wherein the plaintiffs plead and allege the coverture of the plaintiff, Fannie L. Pitt, in avoidance of the contract she is alleged to have entered into with defendants to purchase the goods described in plaintiffs' petition; because said plea of coverture sufficed in law to avoid the contract in question, and entitled her to recover back from the defendants the purchase money paid them by her."

The fifth assignment of error was as follows: "The court erred in charging the jury as follows: 'While a married woman can not be made to pay future payments on the contract for the sale of a stock of goods, yet it is also true, that if she voluntarily and of her own accord makes such a contract and pays part of the purchase money down, she can not recover back that paid, if she declines to go on and consummate the transaction;' said charge not being the law when the contract is executory, as in this case."

*Randolph & Rogers*, for appellants.—The coverture of a woman at the time she enters into an executory contract to buy personal property and pays a part of the purchase money, is sufficient ground to warrant a rescission of such contract and the recovery of the purchase money so paid by her, when there has been no delivery of the property to her, and the contract was not entered into to procure necessaries for herself or for the preservation of her separate property. Sayles' Civ. Stats., art. 2853; 46 Texas, 44; Cowles v. Marks, 47 Ala., 612; Kelly's Contracts of Married Women, 125; 3 Am. St. Rep., 299.

*Ball, Tempel & Ball* and *M. B. Harris*, for appellees.—A contract by a married woman to purchase property partly for cash and partly on her own credit, to be paid for out of her separate estate, is not unlawful, and the cash consideration can not be recovered back. Ullman v. Lewis, 70 Texas, 446; Schuster v. Jewelry Co., 79 Texas, 179; Mitchell v. Mitchell, 80 Texas, 113.

TARLTON, CHIEF JUSTICE.—*Statement of the Case.*—Mrs. Fannie L. Pitt, joined by her husband, L. C. Pitt, brought this suit against Max Elser, N. Harding, and T. P. Boyd, to recover the sum of $1000, her separate property, alleged to have been unlawfully converted by the defendants. The latter, who are appellees, prevailed in the trial court.

On June 16, 1890, L. C. Pitt, an insolvent merchant, executed a deed in trust to B. H. Dunn, trustee, for the benefit of certain creditors, including the defendant T. P. Boyd, the City National Bank, and the Fort Worth National Bank, of which the remaining defendants were the representatives. This instrument authorized Dunn to sell the goods thereby transferred at private sale or in bulk, for cash.

On July 16, 1890, the preferred creditors by written instrument authorized B. H. Dunn to deliver the entire stock to L. C. Pitt, as agent of the creditors, Pitt to sell and pay the proceeds to Max Elser, who, after paying the expenses, was authorized to replenish the stock, paying the balance of the proceeds to the preferred creditors. By an amendment to this instrument, acknowledged July 23, 1890, N. Harding and T. P. Boyd were by the preferred creditors appointed, with Max Elser, a "consulting body in carrying on the above business, a decision of the majority to be final." Under the instrument of date July 16, 1890, L. C. Pitt, as the agent of the preferred creditors, took and held possession of the merchandise.

On December 18, 1890, the defendants, as representatives of the preferred creditors, with the acquiescence and by the co-operation of the husband, L. C. Pitt, entered into a contract with Mrs. L. C. Pitt, whereby she agreed to pay to them for the entire stock of merchandise the sum of $1000 in cash, and the further sum of $1000 to be paid on January 5, 1891, and the further sum of $320 at a future date, to be evidenced by her promissory note.

In accordance with this agreement, she paid the sum of $1000 in a check, which was promptly collected and applied pro rata for the benefit of the preferred creditors. The money thus paid was the separate property of the wife, Mrs. Pitt. This lady testified, that when she delivered the draft it was expressly understood that it was not to be cashed for a day or two, and that in the meanwhile, if her attorneys should advise her that she could not hold the goods as against the creditors of her husband, she should be at liberty to cancel the contract.

This testimony was expressly contradicted by evidence offered on the part of the defendants, and under the verdict of the jury, to whom this issue was fairly submitted by the court for solution, we must conclude against the contention of the plaintiff. On December 18, 1890, in accordance with the terms of the agreement, the defendants, as trustees, executed to Mrs. L. C. Pitt a receipt for $1000, embodying an agreement to turn over to her the stock of merchandise when the sec-

ond payment of $1000 should be made on January 5, 1891, and to take her note for $320.

Mrs. Pitt was advised by her attorneys to stop the transaction, as the defendants had no authority to convey the goods to her, and would vest in her no title; (1) because the creditors secured in the mortgage introduced in evidence had no power to authorize defendants to sell the goods; (2) because the written instrument introduced in evidence under which the defendants claimed that they had such authority, conferred on them no authority to sell the goods; (3) because the sale to her being partly on time, as to so much as she bought on credit at least, the goods would become community property. She accordingly declined to proceed with the transaction, demanded that the amount of the cash payment be refunded to her, and for a refusal to comply with such demand she brought this suit.

The plaintiff, Mrs. Pitt, having failed to make the second payment according to the terms of the agreement, the defendants, on April 18, 1891, sold the goods to a third party, taking the purchaser's note for the sum of $2000. In the interval between the date of the agreement with Mrs. Pitts and the final disposition of the merchandise, the husband, L. C. Pitt, had remained in possession, and had sold goods to the extent of several hundred dollars, and, it seems, had failed to account for the proceeds.

The amount of the indebtedness secured by the deed in trust to Dunn was about $4000 or more; the value of the goods was about $2750. The indebtedness clearly exceeded the value of the merchandise.

*Opinion.*—The following conclusions will dispose, we think, of all the questions presented in appellants' brief.

1. The coverture of Mrs. Pitt did not incapacitate her from entering into the contract above set out. The case of Ullman v. Jasper, 70 Texas, 446, involved the title to lot 62 in the town of Hillsboro. The appellants in that case were creditors of one W. H. Grant, and as such had sought to subject the realty in controversy as the property of said Grant and his wife, Demaris Grant.

The lot in question, in connection with lot 61, conveyed in the same instrument, was claimed to be of the separate estate of the wife, and the deed, executed after the fixing of the plaintiffs' lien as creditors, purported to convey it to her for her separate use and benefit. The consideration of the deed was the sum of $125 in money, the separate funds of his wife, and the further sum of $100, evidenced by the promissory note of the husband.

For convenience, the cash payment was applied to lot 61, and the other, according to the terms of the sale, was bought wholly on credit, as represented by the note of the husband. It was, however, under-

stood between the vendor and the purchasers, that the note of the husband was not to be relied upon in payment of the property.

In this state of facts, it was held that, such being the "contract, in absence of any fraud or collusion, there is nothing in it contrary to any rule of law or of public policy. If, in fact, the purchase was by her, the deed took effect in conveying the lots to her separate estate."

To the same purport is the case of Schuster v. Bauman Jewelry Company, 79 Texas, 179.

For the deferred payment evidenced by the promise of the wife her separate property could not, we think, be held liable; but if her vendor should assume the risk growing out of the uncertainty of her unenforcible obligation, it would not follow that the title which under the terms of the agreement was to vest in her would fail. In any event, to the extent of the cash consideration paid out of her separate funds, she would be protected; and we are not prepared to hold that a contract entered into under the foregoing circumstances is void.

These remarks overrule the second and fifth assignments of error.

2. The court did not err in permitting the defendant Boyd to testify that, in selling the goods to Mrs. Pitt, "he intended and believed that he was only selling his interest in the goods." The expression of his belief was subordinate to his intention, and connected as it was with the expression of his intention—a matter always pertinent in the construction of contracts—it could not be held to have been detrimental to the plaintiff.

3. As chattels were the subject matter of the sale in question, it follows that, in the absence of an express limitation by the vendor, the title which they undertook to transfer to Mrs. Pitt was a warranty title. We therefore inquire whether the testimony shows that, had they delivered the goods to her, she would have taken title to them. In other words, do the facts show that they were authorized to transfer to her a good title to this property—not, however, whether, after they had transferred it, it would have become her separate property?

By the instrument executed to Dunn the merchandise was transferred for the benefit of the creditors named, who were represented in this transaction by the defendants. Creditors other than those preferred had no interest in these goods, because they were not possibly sufficient in value to meet the indebtedness secured.

It would seem that the preferred creditors ratified the acts of the defendants by accepting the proceeds of the collected draft. Dunn, the trustee, having surrendered the property in accordance with the request of the preferred creditors, must be held to have assented to the transaction.

We then inquire whether L. C. Pitt, the grantor in the original trust deed, likewise assented to it. In this connection Mrs. Pitt testifies, that "her husband objected to her purchasing the goods." He, how-

ever, states, that he "knew of the contract of his wife with defendants, because his wife and himself talked it over, and she, thinking she could use her own money, rather than see him leave Fort Worth, would buy the stock of goods, and he was to manage it for her;" * * * that "he saw the contract afterwards, and told her to do as she pleased." On this subject the defendant T. P. Boyd testified: "We were on the trade for some time before it was completed, and finally the trade was consummated and the agreement made as shown by the written agreement in evidence. Mr. Pitt and I first talked about the trade; talked about it several times. We then went to Mrs. L. C. Pitt and made the trade with her."

It thus appears, according to the preponderance of the evidence, that Mr. Pitt, the husband, acquiesced in the contract of sale; and, as we have already stated, that he co-operated therein. If such was the case, all the parties in interest who could in any, even the remotest, degree be affected by the transaction, were parties to it; and we hence conclude that, had it been consummated, the defendants would have transferred title to the vendee. We think it very questionable whether the instruments offered in evidence, construed by their own terms and unaided by the acts of the several parties in interest, especially of the husband, would have been sufficient to authorize the transfer of the merchandise by the defendants; and this because they do not seem by their provisions to contemplate a sale of the character named by the beneficiaries in the deed of trust, or by their representatives, without the co-operation of the former owner of the goods, L. C. Pitt.

We have hesitated whether, on account of the condition of the pleadings, we could extend to this transaction the assistance of the acts of the husband as developed by the evidence. In the special answer of the defendants the husband is described as the agent of his wife in the negotiations about the merchandise, and we questioned whether allegations so limiting the character in which he acted would not deprive the defendants of the right to rely upon his conduct as a party to the transfer of the title; but we have concluded, that the evidence showing him to have thus acted was admissible under the general issue pleaded. The plaintiffs in their petition had, in effect, asserted that the defendants were unauthorized to sell the goods, and that the title which they purported to transfer was invalid. We think that, under the general denial, defendants could rebut the facts relied upon by plaintiffs in support of their assertion, by showing the conduct of the husband in connection with the terms of the instruments referred to.

4. The plaintiffs requested instructions construing the legal effect of the written instruments offered in evidence, and submitting the proposition that these instruments did not authorize the transfer of the merchandise. We think these instructions were properly refused, because—if we concede the correctness of the proposition—the charges

would probably have misled the jury into ignoring the effect of the acts of the husband in the transaction relied upon by the defendants.

5. The court also properly refused the third special charge, predicated upon the theory that the evidence showed an absence of authority in the defendants to make the sale in question.

The verdict of the jury is supported by the evidence, and the judgment must be affirmed.

*Affirmed.*

Delivered April 17, 1894.

Pending a motion for rehearing, the Court of Civil Appeals certified to the Supreme Court the question, "Whether a married woman who has purchased personal property and paid part of the purchase price, cash, and promised to pay the balance at a day specified in the future, at which time, upon the payment being made, the vendor is to deliver the personal property to her, can, before the time for the deferred payment and delivery arrives, avoid the contract, and recover back the cash payment made, on the ground of coverture?" The Supreme Court answered the question in the negative. Pitt v. Elser, 87 Texas, 347. The motion for rehearing was overruled.