**BRINKMAN et al. v. RICK et al.   (No. 1252.)**

(Court of Civil Appeals of Texas.   Beaumont.
June 21, 1926.   Rehearing Denied
June 23, 1926.)

**1. Corporations ⚖➡123(14)—Sale of pledged stock certificates by payee of note before maturity held not to pass title, though maker had refused to put up additional security.**

Sale by payee of note, before its maturity, of stock certificates pledged as security, *held* unauthorized and not to pass title, though it was made in good faith, after maker had refused to put up additional security stipulated in note, where it was not alleged that security furnished had become insufficient.

**2. Corporations ⚖➡123(14)—Maker of note who, after payee's unauthorized sale of pledged stock certificates, authorized company to transfer such certificates on its books to payee, held to have ratified invalid sale.**

Maker of note who, after payee's unauthorized sale of pledged stock certificates, authorized company to transfer such certificates on its books to payee, *held* to have ratified invalid sale, which ratification was binding on payee's creditors, whose attachments were subsequently levied on such stock.

**3. Pledges ⚖➡56(5).**

Pledgor may ratify unauthorized sale of pledged property by pledgee as between parties to pledge, where no right of third person has accrued.

**4. Attachment ⚖➡306—In proceeding to try right of property in certain stock certificates as between buyer from pledgee and seller's creditors, buyer's answer, alleging collusion between creditors and company in having stock reissued in seller's name, held not demurrable.**

In proceeding to try right of property in certain stock certificates as between buyer from pledgee and creditors of pledgee whose attachments were levied thereon, while it stood on books in pledgee's name, buyer's answer alleging that creditors acted in collusion with company in having stock reissued in name of pledgee, contrary to instruction, *held* not demurrable, since in such case creditors would not be innocent lienholders.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Proceeding to try the right of property to certain stock certificates as between Mrs. Pauline W. Brinkman and husband, and A. C. Rick and another. From an adverse judgment, the former appeal. Reversed and remanded.

Dabney, Goggans & Ritchie, of Dallas, for appellants.

Gano, Gano & Scurry and Lee Richardson, all of Dallas, for appellees.

HIGHTOWER, C. J.   The appellants in this case, Mrs. Pauline W. Brinkman and her husband, J. George Brinkman, prosecute this appeal from a judgment adverse to them rendered by one of the district courts of Dallas county in a proceeding to try the right of property as between them and appellees, A. C. Rick and E. A. Stewart, to a certificate of the capital stock of the Howell Company, a corporation in the city of Dallas, representing 125 shares of the capital stock of that corporation.

The controversy arose upon the following facts:

On June 1, 1919, one M. M. Toole, a resident of Dallas, Tex., executed and delivered to appellant J. George Brinkman his promissory note in the sum of $17,500, by the provisions of which Toole promised to pay to Brinkman on or before January 1, 1923, said sum of $17,500 with interest thereon at the rate of 6½ per cent. per annum from date of the note until paid.   We here copy the note in full:

"$17,500.00          Dallas, Tex., June 1, 1919.

"On or before January 1, 1923, after date I promise to pay to the order of J. George Brinkman, for value received, negotiable and payable without defalcation or discount, at Kansas City, Missouri, with interest at the rate of 6½% per annum from date until paid; I have deposited or pledged with J. George Brinkman, as collateral security for the payment of this note, 150 shares of the capital stock of the Toole-Howell Furniture Company, a corporation of Dallas, Texas, the market value of which is now $100.00 per share.

"Now, in the event of the nonpayment of this note at maturity, the holders hereof are hereby invested with full authority to use, transfer, hypothecate, sell, or convey the said property, or any part thereof, or to cause the same to be done, at public or private sale with or without notice or demand of any sort, at such place and on such terms as the said holders may deem best; and the holders of this note are authorized to purchase said collaterals when sold for their own protection; and the proceeds of such sale, transfer or hypothecation shall be applied to the payment of this note, together with all protests, damages, interests, costs and charges due upon the note, or incurred by reason of its nonpayment when due, or in the execution of this power.   Also a commission of two and one-half per cent. on the gross amount of said collaterals sold.   The surplus, if any, after payment of this note, together with all charges above stated, shall be paid to the drawer of this note, or at the election of the holders hereof, be paid on any other obligation of the drawer hereof, whether as principal debtor or otherwise, held by the holders hereof; and if the proceeds of the above sale shall not be sufficient to pay this note, the drawer hereof agrees to make good on demand any deficit; and it is understood and agreed, should there be any depreciation in the value of said security prior to the maturity of this note, such an amount of additional security shall be furnished as will be satisfactory to said J. George Brinkman, and should such additional security not be furnished within twenty-four hours after de-

mand so to do, then and in that event said J. George Brinkman may proceed at once and sell as above specified the security herein named.

"In the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of 10 per cent. on the principal and interest of this note shall be added to the same as collection fees.                [Signed]  M. M. Toole."

At the time of the execution of the note, Toole was the owner of 125 shares of the capital stock of the Toole-Howell Furniture Company of Dallas, Tex., a private corporation, which afterwards changed its name to the Howell Company. These shares of stock were represented by five different certificates, numbered 3, 4, 7, 8, and 9, and each of the certificates calling for 25 shares of the capital stock of the Toole-Howell Furniture Company. In order to secure the payment of his note to Brinkman, Toole attached thereto as pledge to Brinkman these five certificates of stock. On the back of each certificate he wrote the following:

"For value received I hereby sell and assign unto J. George Brinkman the shares of capital stock represented by the within certificate, and to hereby irrevocably constitute and appoint J. George Brinkman to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises. "Dated June 12, 1919.
                "[Signed]  Matt M. Toole."

On March 30, 1921, J. George Brinkman, according to the contention of appellants here, sold and delivered the above-mentioned five certificates of stock to his wife, Pauline W. Brinkman, for the claimed consideration of $17,500. On the back of each certificate J. George Brinkman wrote the following:

"For value received I hereby sell, assign and transfer unto Pauline W. Brinkman the 25 shares of capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ——— to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises. "Dated March 30, 1921.
                "[Signed]  J. George Brinkman."

After these five certificates of stock were delivered to Mrs. Brinkman by Mr. Brinkman, she, according to her contention, immediately delivered them to the Commerce Trust Company of Kansas City, Mo., with instructions to the vice president of that corporation, Mr. Townley Culberson, to send these certificates to the Howell Company at Dallas, Tex., with instructions to that company to have the same reissued in one certificate in the name of Mrs. Pauline W. Brinkman. Thereafter Mr. Culberson did send these certificates to Dallas, Tex., in a letter addressed to a Mr. Peterson, manager of the Commerce Farm Credit Company of Dallas, Tex.; a correspondent of the Commerce Trust Company

of Kansas City, Mo., with instructions to Mr. Peterson to deliver the certificates to the Howell Company for the purpose of having them reissued in one certificate in the name of J. George Brinkman. This transaction took place a few days prior to May 11, 1921. Mr. Peterson took the certificates to the Howell Company in the city of Dallas, and had them reissued in one certificate in the name of J. George Brinkman; this one certificate being certificate No. 29, calling for 125 shares of the capital stock to the Howell Company. This certificate No. 29 was issued on May 11, 1921, and on that date appeared upon the books of the Howell Company to be the property of J. George Brinkman.

On May 9, 1921, the appellee Rick, claiming an indebtedness against J. George Brinkman of $443.80, filed a suit against Brinkman in one of the county courts at law of Dallas county, and on May 11, 1921, two days later, caused a writ of attachment to issue, which was levied by a constable of Dallas county upon certificate of stock No. 29, which at the time was in the possession of the Commerce Farm Credit Company of Dallas. This certificate was levied upon by the constable as the property of J. George Brinkman.

On May 12, 1921, the appellee Stewart filed a suit in one of the district courts of Dallas county against J. George Brinkman for debt and damages in the sum of $8,415, and caused a writ of attachment to issue and to be levied by the same constable of Dallas county upon certificate of stock No. 29, representing 125 shares of the Howell Company as the property of J. George Brinkman, but the constable stated in making this levy that it was made subject to the levy already made in the Ricks case.

On September 2, 1921, appellant Mrs. Pauline W. Brinkman filed with the constable that levied these two writs of attachment her claimant's oath and bond, claiming stock certificate No. 29 levied upon by the constable as her property, and the constable accepted the bond and delivered the certificate of stock to Mrs. Brinkman. The return of the constable on the writs showed that he had fixed the value of the certificate of stock attached at $12,000, and therefore he returned and filed the claimant's oath and bond in the district court of Dallas county, together with a copy of each writ of attachment, and under the order and direction of that court the issues between the parties here were made up and tendered and the case proceeded to trial with a jury, but before the trial was concluded, the case was taken from the jury, as we shall hereinafter show.

The issue tendered by the plaintiffs, Rick and Stewart, in their original petition, was, in substance, that at the time their writs of attachment were levied upon certificate of stock No. 29, the same stood in the name of J. George Brinkman upon the books of the Howell Company, and that, in fact, said cer-

tificate was the property of J. George Brinkman as it purported to be, and that Mrs. Brinkman had no interest whatever in the same, and that by levy of their writs of attachment plaintiffs had secured an attachment lien on the stock, and prayed for its foreclosure to satisfy their respective debts, which at that time, in both cases, had been reduced to judgment against J. George Brinkman.

Mrs. Brinkman, joined by her husband pro forma, tendered by her original answer substantially the following issues: She alleged that she purchased in good faith the five certificates of stock Nos. 3, 4, 7, 8, and 9, afterwards reissued as certificate No. 29, as we have stated above, from her husband, J. George Brinkman, on March 30, 1921, and that she paid $17,500 for such certificates, and that the consideration paid therefor was out of her own separate means, and that J. George Brinkman, her husband, had no interest in the certificate of stock No. 29 at the time it was attached, and that the same was not subject to the lien of attachment of either of the plaintiffs. She further alleged, in substance, that at the time she purchased the certificates of stock from her husband and paid him therefor, she delivered the same to the Commerce Trust Company of Kansas City, Mo., as her agent, acting through its vice president, Mr. Culberson, with instructions that the certificates be sent to the Howell Company at Dallas, Tex., to be reissued in her name in one certificate, and be so transferred upon the books of that company; that if the Commerce Trust Company, who was her agent and not the agent of J. George Brinkman, sent the certificates to Dallas and instructed the Howell Company to reissue the same in the name of J. George Brinkman, such instruction was without her authority and was not binding upon her, and did not affect her title to the stock represented by such certificates; that if said certificates were reissued in the name of J. George Brinkman, the same was done by the Howell Company at Dallas, after consultation between that company and the plaintiffs, Rick and Stewart, that said certificates of stock should be so reissued in the name of J. George Brinkman for the purpose and with the view of giving the plaintiffs an opportunity to levy writs of attachment upon said stock for the purpose of facilitating the collection of their debts against J. George Brinkman; and that the Howell Company and the plaintiffs, Rick and Stewart, acted in collusion between themselves in having said certificates reissued in the name of J. George Brinkman, in disregard of the rights of Mrs. Brinkman and her instructions to have the certificates issued in her own name.

The appellees Rick and Stewart filed a supplemental petition, in which they, in substance, reiterated their former allegations that the stock, when levied upon under their writs of attachment, stood in the name of J. George Brinkman on the books of the Howell Company, and that it was, in fact, the property of J. George Brinkman at the time of such levies, and that the pretended sale by J. George Brinkman to his wife on March 30, 1921, was not a sale in good faith by Brinkman to his wife, but that it was done for the purpose of acquiring the title to the five certificates of stock pledged to secure the Toole note for much less than the value of such stock, and that the transaction between Brinkman and his wife was fraudulent and for the purpose of hindering and delaying and defeating the creditors of Brinkman in the collection of their debts; that, in fact, no consideration was paid by Mrs. Brinkman for the stock which she claimed to have purchased from her husband, and that therefore she acquired no title thereto; that at the time of the purported sale by Brinkman to Mrs. Brinkman of the five certificates of stock, there was no authority in Brinkman to sell the same, even if he did sell it or intended to sell it to his wife, because the Toole note to secure the payment of which the stock was pledged was not due when the sale was made; and that therefore the sale was invalid and utterly void. The plaintiffs reiterated their allegations that at the time their writs of attachment were levied the stock stood in the name of J. George Brinkman upon the books of the Howell Company, and that their attachment liens should be foreclosed.

The pleadings as a whole are quite lengthy, covering some 35 pages of the transcript; but this is a sufficient statement of them for the purpose of our disposition of the present appeal.

When the case was reached for trial in the district court, the appellees, Rick and Stewart, presented a general demurrer and several special exceptions to the answer of Mrs. Brinkman, but at that time the court overruled the general demurrer and special exceptions. Later on, however, and after the plaintiffs had finished with their evidence and the defendants, Brinkman, and Mrs. Brinkman, had introduced a good deal of evidence tending to support the allegations in their answer, the court reconsidered his action in overruling the general demurrer filed by the appellees, and then sustained their general demurrer, and also upon motion of appellees struck out all testimony that defendants had offered up to the time the general demurrer was sustained, and upon further motion of appellees the court instructed a verdict in favor of appellees for the foreclosure of their writs of attachment on the certificate of stock No. 29 claimed by Mrs. Brinkman to the extent of the indebtedness held by the appellees against J. George Brinkman. It is from such action on the part of the trial court that this appeal is prosecuted.

Before proceeding to any of the legal points

involved, we will make this further statement of facts as reflected by this record:

When M. M. Toole learned that Brinkman had sold to Mrs. Brinkman the 125 shares of stock as represented by the five certificates attached to Toole's note and pledged to secure its payment to Brinkman, he protested against the sale, contending that Brinkman had no authority to make the sale of this stock before the maturity of the note which it secured, and that his pretended sale or attempted sale of this stock to his wife was invalid. Toole wrote a letter to the Howell Company, advising that company that these 125 shares of stock were still his property, and warning them not to recognize any transfer on the books of that company of any of this stock to anybody. Afterwards and prior to the 11th day of May, 1921 (but the record fails to disclose just when), Toole wrote the Howell Company the following:

"I hereby release the Howell Company from the above notice and hereby authorize said company to transfer my stock comprising 125 shares to J. George Brinkman.
          "[Signed]   M. M. Toole."

The record shows that this adjustment, settlement, or compromise between Toole and J. George Brinkman was in consideration of Brinkman's paying to Toole $1,050 and the delivery to Toole of his $17,500 note, as fully paid and discharged. We repeat that this adjustment and settlement between Toole and J. George Brinkman was prior to the levy of either of the writs of attachment in this case.

We shall treat this case just as if the court had sustained the general demurrer of the appellees when first presented and test the correctness of the court's action accordingly.

[1] We might say at this point that in our opinion the sale by Brinkman to his wife of the five certificates of stock pledged to secure the Toole note, whether made in good faith by Brinkman or not, was unauthorized by any provision in the note, as we construe it, and Mrs. Brinkman could acquire no title to the stock purchased from her husband, even if she paid for it out of her own separate funds, as she alleged. It is clear, we think, from the provisions of the note and the allegations of Mrs. Brinkman's answer, that nothing had transpired which gave the right to Brinkman to sell this pledged stock at the time it is claimed he did so. The note at that time lacked nearly two years of being due, and it was not provided that the interest should be paid annually, although the rate of interest on it was 6½ per cent. per annum; nor was it alleged that the security furnished by Toole, that is, the 125 shares of stock, had become insufficient as security for the payment of the note. She did allege that Mr. Brinkman had declared the note due because of the failure on Toole's part to pay the accrued interest and because of his failure, after repeated request, to put up an additional 25 shares of

stock, as was stipulated for in the note. Without going into detail in this connection, it is our opinion that the failure on the part of Toole to put up the additional 25 shares did not give J. George Brinkman the right to sell this pledged stock at the time it is claimed he did so. We therefore overrule the first contention made by appellants, to the effect that under the provisions of the note the sale of the stock by Brinkman to his wife was a valid sale at the time it was made.

[2, 3] As we have shown above, one of the allegations contained in Mrs. Brinkman's answer was, in substance, that at the time she delivered the five certificates of stock to Mr. Culberson, vice president of the Commerce Trust Company, in Kansas City, Mo., she instructed him to send the same to Dallas, and have them reissued and transferred in her name in one certificate on the books of the Howell Company, and that Mr. Culberson nor any one else was authorized to have such certificates reissued and transferred in the name of J. George Brinkman; that if the certificates were reissued and transferred in the name of J. George Brinkman, the same was without authority and was done by reason of collusion between the plaintiffs, the appellees here, and the Howell Company. Now, it is our opinion that if Mrs. Brinkman, in fact, purchased the five certificates of stock from her husband, and paid therefor her own separate funds, as alleged by her, and directed the Commerce Trust Company, through its vice president, Mr. Culberson, to send the certificates to Dallas to have them transferred in her name on the books of the Howell Company, and if the plaintiffs in this suit, for the purpose of facilitating the collection of their debts against Brinkman, acting in collusion with the Howell Company, as alleged by Mrs. Brinkman, had that company to reissue these certificates in one certificate and transfer them on the books of the Howell Company in the name of J. George Brinkman, they cannot claim that they were innocent lienholders upon the certificate of stock levied upon by their writs of attachment as against Mrs. Brinkman. Now, we have shown that at some date prior to the levy of these writs of attachment, Toole had adjusted and settled his controversy with Mr. Brinkman growing out of the sale by Brinkman of this pledged stock, and by his written authority authorized the Howell Company to transfer this stock upon its books to J. George Brinkman. It is our opinion that this action on the part of Toole was a clear ratification of the invalid sale of his stock to Mrs. Brinkman, and no right in the stock being in either of the appellees at the time of such ratification by Toole, they cannot question his action in that connection, but as between them and Mrs. Brinkman, the sale to her by her husband, though originally invalid, was rendered valid and binding by Toole's ratification thereof. We know of no reason why a pledgor may not

ratify an unauthorized sale of pledged property by the pledgee as between the parties to the pledge, where such ratification has taken place before any right in a third person has accrued. In 31 Cyc. 882, the author says:

"The pledgor may waive compliance by the pledgee of any of the requisites of a valid sale, may ratify it, so as to make it binding upon him. Such ratification need not be express, but may be implied, as by accepting the proceeds of the sale by a recognition of the sale in a subsequent settlement, by negotiations for a repurchase of the property, or even by mere acquiescence, especially where such acquiescence is long continued."

The author cites a number of authorities sustaining the rule announced.

[4] We think it is clear that Toole's action, as we have stated it, in accepting the $1,050 from J. George Brinkman in settlement of his controversy with Brinkman over his sale of the pledged stock and his written authority to the Howell Company to transfer his 125 shares of stock to Brinkman was a complete and full ratification of the invalid sale made by Brinkman to his wife, and all of this having taken place before the writs of attachment in this case were levied, the appellee cannot question the title of Mrs. Brinkman to the stock. And·if, as alleged by Mrs. Brinkman, the appellees in this case acted in collusion with the Howell Company in having this stock reissued and transferred upon the books of that company in the name of J. George Brinkman, they are in no. position to claim that they are innocent lienholders by reason of the fact that their attachments were levied upon·this stock while it stood in the name of J. George Brinkman. For this reason alone, if for no other, we have no doubt that the trial court was in error in sustaining the general demurrer interposed by the appellee.

The judgment, for that reason, must be reversed and the cause remanded, and.it has been so ordered.