**BRINKMAN et al. v. RICK et al.**
(No. 10419.)

Court of Civil Appeals of Texas. Dallas.
June 13, 1929.

Rehearing Denied July 13, 1929.

Dabney, Goggans & Ritchie, of Dallas, for appellants.

Lee Richardson, W. H. Flippen, and John T. Gano, all of Dallas, for appellees.

LOONEY, J. A. C. Rick and A. E. Stewart, creditors of J. George Brinkman, brought suit against him, in separate actions, and caused writs of attachment to be levied upon, as the property of the defendant, certificate No. 29, representing 125 shares of stock in the Howell Company, a corporation, formerly Toole-Howell Furniture Company. Mrs. Pauline W. Brinkman, wife of J. George Brinkman, claimed the property, and in due time and form, joined pro forma by her husband, filed claimant's oath and bond for the trial of her right to the property. Issues were formed under the direction of the court, and, on trial in June, 1923, the court reached the conclusion that the general demurrer urged by plaintiffs to the answer of defendants, theretofore overruled, should have been sustained, thereupon halted the case, struck out all evidence offered by defendants, sustained the general demurrer to their answer, and instructed a verdict for plaintiffs. Defendants appealed to this court, and, pending appeal, the case was transferred by the Supreme Court to the Court of Civil Appeals at Beaumont, and by the latter court was reversed and remanded, and application by plaintiffs for writ of error was dismissed by the Supreme Court for want of jurisdiction. See Brinkman v. Rick, 285 S. W. 885. The second trial was to a jury, and resulted in judgment for plaintiffs, foreclosing their liens upon the property levied upon, and denying the claim of Mrs. Brinkman, from which this appeal is prosecuted.

The facts from which this lawsuit arose are substantially these: On June 1, 1919, Matt M. Toole was indebted to J. George Brinkman in the sum of $17,500, evidenced by note due January 1, 1923, and secured by a pledge of five stock certificates aggregating 125 shares of the capital stock of Toole-Howell Furniture Company, a corporation of Dallas, Tex. On March 30, 1921, Brinkman, being indebted to his wife something over $17,500, assumed authority to act under the collateral agreement with Toole, sold the 125 shares of stock to his wife in settlement of

$17,500 of this indebtedness, and thereupon transferred and delivered to her the stock certificates. It is pertinent to state here, that J. George Brinkman, in selling this stock, acted in excess of his authority under the collateral agreement; therefore the sale was unauthorized and voidable, at the instance of Toole. After purchasing the stock, Mrs. Brinkman delivered the certificates to Mr. Townley Culbertson, vice president of Commerce Trust Company of Kansas City, Mo., where these parties resided, with instructions to send them to Dallas and have the stock reissued in her name. Culbertson immediately mailed the certificates to a Mr. Peterson, manager of the Commerce Farm Credit Company, of Dallas, a subsidiary and correspondent of the Commerce Trust Company, with instructions to present the certificates to the Howell Company and have one certificate issued for all the stock in the name of Pauline W. Brinkman. The Howell Company refused to transfer the stock or to reissue at that time, because Toole, pledgor, had made objections to the sale by Brinkman to his wife, but even before, on August 17, 1920, had notified Howell Company, in writing, not to transfer the stock without his written consent. However, on May 9, 1921, Brinkman and Toole settled their differences, Brinkman paid Toole $1,050 in cash, and surrendered, as paid, his note for $17,500; thereupon Toole indorsed on the written notice theretofore served on Howell Company the following: "I hereby release the Howell Company from the above notice and hereby authorize said company to transfer my stock, comprising 125 shares, to J. George Brinkman."

After this settlement, Peterson, acting for Culbertson, again presented the stock certificates to the Howell Company for transfer. It seems that in a letter dated May 7, 1921, Culbertson requested Peterson to have the company reissue the stock in one certificate in the name of J. George Brinkman, and, as requested, Howell Company, on May 11, 1921, issued the certificate in suit, being No. 29, for 125 shares. The instruction to Peterson to have the stock reissued in the name of Brinkman was a mistake on the part of Culbertson. Mrs. Brinkman had made no such request; in fact, Culbertson did not intend to have the stock thus reissued, as it was in violation of Mrs. Brinkman's instructions. In this status, on May 11, 1921, plaintiffs caused the writs of attachment to be levied; the officer making the levy took the certificate from the possession of Peterson, who, under Culbertson, was holding for Mrs. Brinkman—in other words, the stock, when seized and taken possession of by the officer, was in the constructive possession of Mrs. Brinkman.

The jury found that the settlement between Brinkman and Toole May 9, 1921, did not constitute a ratification of the voidable sale by Brinkman to his wife on March 30, 1921, but was a direct sale of the stock by Toole to Brinkman.

In regard to this transaction, the Beaumont court used the following language: "It is our opinion that this action on the part of Toole was a clear ratification of the invalid sale of his stock to Mrs. Brinkman, and no right in the stock being in either of the appellees at the time of such ratification by Toole, they cannot question his action in that connection, but as between them and Mrs. Brinkman, the sale to her by her husband, though originally invalid, was rendered valid and binding by Toole's ratification thereof."

■■ The general rule in this state, though not inflexible, is that a former decision becomes the law of the case, for it is said, "If the rule of stare decisis is of any value, it should be adhered to, when the precise question is again presented in the same court, between the same parties, and on the same state of facts." See Burns v. Ledbetter, 56 Tex. 282. So, under this rule, the invalid sale by Brinkman to his wife was ratified by Toole; hence at the time the writs of attachment were levied, she had title to and was in possession of the stock. But, as we view the case, it is immaterial whether the settlement between Toole and Brinkman constituted a ratification of the invalid sale, or was in effect a direct sale of the stock by Toole to Brinkman, for in either event the result is the same. Brinkman assumed the right to sell and did sell and deliver the stock to his wife, at a fair price and for a valuable consideration. It does not appear that she knew or was in possession of any facts that impeached his right or power to sell. She was acting under the advice of Mr. Townley Culbertson, who advised that it was all right, that she could purchase the stock in settlement of the debt against her husband. Under these circumstances, the law will imply, as against Brinkman, a warranty of title to the stock, notwithstanding his want of authority to sell.

■ After stating the rule as it formerly existed at common law, to the effect that no warranty of title would be implied on a sale of chattels, the present rule on the subject is announced in 24 R. C. L. 182, § 454, as follows: "This view was, however, at a later date repudiated in England and it is the general rule, as established by the later authorities, both in England and in this country, in harmony with the rule of the civil law, that the law will ordinarily imply a warranty of title when chattels in the possession of the seller are sold for a fair price." That this is the prevailing rule in this state, see Mathews v. Allen, 6 Tex. 330; McKinney v. Fort, 10 Tex. 220–232; Granberry v. Hawpe, 30 Tex. 409–411; Pitt v. Elser, 7 Tex. Civ. App. 47, 32 S. W. 146, 147; Gurley v. Dickason, 19 Tex. Civ. App. 203, 46 S. W. 53–55.

811

If, therefore, we accept the theory presented by the finding of the jury, to the effect that the stock was in fact sold to Brinkman by Toole on May 9, 1921, the title thus acquired by him passed immediately, by estoppel, to Mrs. Brinkman, under the implied warranty of title. The rule that title to personalty subsequently acquired by the vendor, even under a sale without an express covenant of warranty of title, inures by estoppel to the benefit of the buyer, prevails generally. See 21 C. J. 1079, § 44; Gottfried v. Miller, 104 U. S. 521, 26 L. Ed. 851–854; Vulcan Detinning Co. v. American Can Co., 67 N. J. Eq. 243, 58 A. 290; Dorsey v. Gassaway, 2 Har. & J. (Md.) 402, 3 Am. Dec. 557–562; Curran v. Burdsall (D. C.) 20 F. 835; Clark v. Slaughter, 34 Miss. 65; Gookin v. Graham, (Tenn.) 5 Humph. 480–484. The courts of our state hold uniformly that one who assumes ownership or authority to sell property is estopped to afterwards assert title adverse to that conveyed. See Corzine v. Williams, 85 Tex. 499, 22 S. W. 399; Cope v. Blount, 99 Tex. 431, 90 S. W. 868; Millican v. McNeill, 102 Tex. 189, 114 S. W. 106, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74; Crump v. Sanders (Tex. Civ. App.) 173 S. W. 559; Wilson v. Beck (Tex. Civ. App.) 286 S. W. 315–319, and authorities cited.

It is immaterial, therefore, which view we take—that is, whether Toole ratified the voidable sale of the stock by Brinkman to his wife (expressed by the Beaumont court), or whether he sold the stock to Brinkman (as found by the jury)—for either leads to the same conclusion; that is, that title to the stock was vested in Mrs. Brinkman prior to and at the time the writs of attachment were levied.

But, if these propositions are not tenable, there is yet another, under which Mrs. Brinkman is, in our opinion, entitled to prevail. She paid, under the voidable sale, $17,-500 of her separate means, that discharged the note held by Brinkman against Toole, for the security of which the stock in question was pledged. If she had not acquired title, either by ratification or estoppel, then unquestionably she took the place of Brinkman as pledgee, and became subrogated to his rights. Neither Toole, nor any one claiming under or in privity with him, could have acquired or redeemed the pledge on any other or better terms than could have been done before the sale of the stock was attempted. Our courts have repeatedly held that a purchaser at a void judicial sale of land, whose bid is applied to the discharge of a valid judgment lien, is subrogated to the rights of the judgment creditor, and is entitled to be reimbursed before being evicted. See French v. Grenet, 57 Tex. 273; Burns v. Ledbetter, 56 Tex. 282; Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1121; Folts v. Ferguson, 77 Tex. 301–305, 13 S. W. 1037; Halsey v. Jones, 86 Tex. 488–491, 25 S. W. 696.

In the Northcraft-Oliver Case, 74 Tex. 162, 168, 11 S. W. 1121, 1122, Judge Henry used language pertinent to the point now under consideration, as follows: "But if the property so purchased was, at the time of the purchase, charged or encumbered with the debt for which it was sold, then, independently of the legal proceedings under which it was sold, we think the rule that the purchase money must be restored before the property can be recovered back by its owner or his heirs does apply."

Pursuing this thought a step further, the courts hold, where property pledged for the security of debt is seized under process and taken possession of, the pledgee may resort to the statutory remedy, of trial of right of property, to protect his possession. See Osborn v. Koenigheim, 57 Tex. 91–95; White v. Jacobs, 66 Tex. 462, 1 S. W. 344; Schmick v. Bateman, 77 Tex. 326–330, 14 S. W. 22; Willis v. Thompson, 85 Tex. 301–309, 20 S. W. 155; Sanger v. Henderson, 1 Tex. Civ. App. 412, 21 S. W. 114.

We conclude, therefore, that at all events Mrs. Brinkman was, by subrogation, pledgee of this stock, and as such was entitled to protect her rightful possession from being violated, until fully reimbursed the amount of her separate funds, used by Brinkman, in paying the note to Toole, for which the stock was pledged.

Appellees contend, however, that they are innocent lienholders, because the jury found they had not colluded with Howell Company to cause the stock certificates to be reissued in the name of J. George Brinkman, to facilitate the collection of their debts, and, further, that they had no notice of the claim of Mrs. Brinkman at the time their writs were levied. On the first appeal, the Beaumont court, considering the sufficiency of a defense to which a general demurrer had been sustained, said: "And if, as alleged by Mrs. Brinkman, the appellees in this case acted in collusion with the Howell Company in having this stock reissued and transferred upon the books of that company in the name of J. George Brinkman, they are in no position to claim that they are innocent lien holders by reason of the fact that their attachments were levied upon this stock while it stood in the name of J. George Brinkman. For this reason alone, if for no other, we have no doubt that the trial court was in error in sustaining the general demurrer interposed by appellees."

The court discussed the issues as pleaded by defendants, and, in our opinion, very properly held that, under the circumstances alleged, appellees were in no position to claim that they were innocent lienholders, but this was not tantamount to saying that, in the absence of such alleged collusion with Howell Company, they would be innocent lienholders. The converse of the proposition is not true, in fact, as we view the matter, it is immaterial whether such collusion did or did not

exist, for in neither event, under the facts, could appellees claim the status of innocent lienholders.

The jury found, contrary to the undisputed evidence, that Stewart had no notice of the claim of Mrs. Brinkman prior to the levy of the attachment. However, we do not regard the fact material, whether appellees did or did not have notice of her claim prior to the attachments, as they can claim no greater interest in the stock than the interest owned by J. George Brinkman at the time the levies were made. Johnson v. Darr, 114 Tex. 516, 272 S. W. 1098, 1099. There can be no contention that Mrs. Brinkman was estopped to assert her ownership, by reason of the mistake of her agent, Mr. Culbertson, in causing the stock to be reissued in the name of J. George Brinkman just a few hours before the attachments were levied, nor can it be contended that appellees are given precedence over Mrs. Brinkman under any provision of the registration statute. We therefore hold that appellees are not innocent lienholders.

Appellees make the further contention that, as the jury found that the sale of stock by Brinkman to his wife was not in good faith, no title passed, nor could she have acquired any right by virtue of the subsequent sale of the stock by Toole to Brinkman. This finding, in view of the pleading and evidence, is somewhat ambiguous. On this issue, appellees alleged: "That such alleged and purported default and sale was a fraudulent and illegal attempt on the part of the defendant, J. George Brinkman, to secure the said stock for himself and to place same in the name of his wife in order to defraud the true and rightful owners of same and the creditors of the said J. George Brinkman, and in so far as the defendant, Mrs. Pauline W. Brinkman, permitted the use of her name in said transaction, and joined with her said husband therein, she was a party to such attempted fraudulent sale and transfer; that the claim herein made by the said Mrs. Pauline W. Brinkman is not made in good faith, but is fraudulently made and is a fraudulent attempt on the part of Mrs. Pauline W. Brinkman and J. George Brinkman, acting in collusion to defraud the said creditors of the said J. George Brinkman, and by reason thereof said attempted and purported foreclosure and sale was void and of no force and effect."

That Brinkman was not in fact authorized, under the collateral agreement, to sell the stock at the time he attempted to make the sale to his wife, is not disputed, but it was not made to appear that Mrs. Brinkman was apprised of his want of authority. We fail to find evidence sufficient to justify a finding that the sale was for any purpose other than to pay the debt Brinkman owed his wife, and particularly the evidence failed to show that Mrs. Brinkman had in view any purpose other than to secure payment of her husband's indebtedness to her. With this

background of pleading and evidence, the court submitted the following issue, being No. 1: "Do you find from a preponderance of the evidence, that the alleged sale from J. George Brinkman to Mrs. Pauline W. Brinkman, of date March 30th, 1921, was made in good faith?" To this the jury answered "No."

In an effort to dissipate the ambiguity and ascertain the meaning to be given the finding of the jury, we could not assume that, the court intended to submit an issue not properly raised by evidence, nor that the jury answered an issue not properly supported by evidence. Therefore, as the record discloses, both of pleading and proof, that the court could have submitted, and that the jury could with propriety have found, that the sale of the stock was not in good faith as to the pledgor, we conclude that the jury intended to find and did find that the attempted sale of the stock by Brinkman to his wife was not in good faith as to Toole. But appellees get no comfort from this finding; Toole settled his controversy with Brinkman and released any claim he had to the stock before the writs were levied.

In Owens v. Clark, 78 Tex. 547–550, 15 S. W. 101, 102, Judge Henry used language pertinent to the question now under consideration, as follows: "If the debt of the claimant was an honest one and he bought no more property than was sufficient to pay it, he had a perfect right to make the purchase, notwithstanding the insolvency of Rose [grantor], even if the purpose of Rose was to evade the payment of other debts, and such purpose was known to the claimant [citing authorities]."

Also, see, Head v. Bracht (Tex. Civ. App.) 40 S. W. 630; Sparks v. Ponder, 42 Tex. Civ. App. 431, 94 S. W. 428; Awalt v. Schooler (Tex. Civ. App.) 131 S. W. 302.

We conclude, therefore, that the finding of the jury to the effect that the sale of the stock was not in good faith was in no sense an adverse finding to or an impeachment of the claim of Mrs. Brinkman, and that, under the findings of the jury and the undisputed, facts otherwise, judgment should have been rendered in her favor.

Appellants also urged a number of assignments, based on the action of the court in admitting evidence over their objections, but, in view of the disposition made of the case, we do not deem it necessary to pass on these assignments. For reasons stated, the judgment below is reversed, and judgment here rendered for appellants.

Reversed and rendered.

### On Motion for Rehearing.

In their motion for rehearing, appellees present the same questions considered on original submission, but, as we discover no reason to change our decision, these will be given no further consideration.

However, appellees have so positively and

categorically challenged the correctness of several of our findings of fact that we deem it necessary to notice briefly these criticisms:

1. In assignment No. 23 appellees say, "The Honorable Court of Civil Appeals erred in holding that Culbertson, the agent for Mrs. Brinkman, issued instructions to issue such stock certificate in her name, for the reason, that same is wholly unsupported by any evidence in the record."

This criticism is leveled at the following statement in the opinion; we said that: "After purchasing the stock, Mrs. Brinkman delivered the certificates to Mr. Townley Culbertson, vice president of Commerce Trust Company of Kansas City, Mo., where these parties resided, with instructions to send them to Dallas and have the stock reissued in her name. Culbertson immediately mailed the certificates to a Mr. Peterson, manager of the Commerce Farm Credit Company, of Dallas, a subsidiary and correspondent of the Commerce Trust Company, with instructions to present the certificates to Howell Company and have one certificate issued for all the stock in the name of Pauline W. Brinkman."

The criticism of appellees is that this finding is "wholly unsupported by any evidence in the record." The record will disclose which is correct; that is, the finding of the court or the criticism of counsel.

Mrs. Brinkman, a witness in her own behalf, testified: "I have already stated that I directed Mr. Culbertson to have these certificates of stock transferred in my name, and that Mr. Culbertson was my agent and representative in representing my interest in this matter, and that anything he did was satisfactory to me."

On this point, Mr. Culbertson testified: "When I received the 125 shares of stock from her and gave her my receipt therefor, I was given instructions about what to do with this stock; I was instructed by Mrs. Brinkman to send the five certificates for 25 shares each to our Dallas office with instructions to present the stock to 1401–1403 Elm street, the Howell Company, and have one certificate for the full 125 shares issued in her name, and upon receipt of the new certificate to instruct them to deliver the five old certificates, and I gave those instructions to our agent at Dallas. Mrs. Brinkman never did give me any other instructions to the contrary, and she never did authorize me to have these certificates transferred to Mr. J. George Brinkman. The Commerce Farm Credit Company, of Dallas, was acting in the capacity of representatives of the Commerce Trust Company."

C. G. Peterson, an officer of the Commerce Farm Credit Company, of Dallas, correspondent or subsidiary of the Commerce Trust Company of Kansas City, with which Culbertson was connected, testified as follows: "I received those certificates of stock from Mr. Townley Culbertson, of the Commerce Trust Company of Kansas City, Missouri. At the time I received those certificates of stock from Mr. Culbertson, I received a letter of instructions with them. This letter that you hand me is the letter that I received from Mr. Culbertson with the stock certificates in question."

The letter in question is as follows: "March 30, 1921. Mr. Peterson: Enclosed please find five certificates for 25 shares each in the Toole-Howell Furniture Company. Please present at 1401–3 Elm Street to the Howell Company, which is the present corporation, and have one certificate issued for the full amount of 125 shares issued in the name of Pauline W. Brinkman. I would appreciate your sending somebody over to have this done tomorrow and get it back to me as soon as you can."

The evidence just quoted is uncontradicted, and overwhelmingly supports the finding.

2. It is claimed by appellees in their twenty-fourth assignment that the court erred in holding that the instruction, later given, by Culbertson, to have the stock issued in the name of J. George Brinkman was the result of a mistake on the part of Culbertson; the contention of appellees being that this finding is not supported by any evidence in the record, but finds support alone in the allegations of pleadings.

The record discloses, and our findings show, that, when Peterson, as directed by Culbertson, requested Howell Company to issue one certificate in the name of Mrs. Brinkman, in lieu of the 5 certificates for 25 shares each originally issued to Toole and pledged by him to secure his note to J. George Brinkman, the Howell Company declined to make the exchange and transfer, because Toole had (prior to that time) filed with the company a written notice warning them not to make any transfer of the stock, and that, after Toole and Mr. Brinkman settled their differences, Toole released the Howell Company from the operation of said notice. This brings us to the finding under criticism, as follows: We said: "After this settlement, Peterson, acting for Culbertson, again presented the stock certificates to the Howell Company for transfer. It seems that in a letter dated May 7, 1921, Culbertson requested Peterson to have the company reissue the stock in one certificate in the name of J. George Brinkman, and, as requested, Howell Company, on May 11, 1921, issued the certificate in suit, being No. 29, for 125 shares. The instruction to Peterson to have the stock reissued in the name of Brinkman was a mistake on the part of Culbertson. Mrs. Brinkman had made no such request; in fact, Culbertson did not intend to have the stock thus reissued, as it was in violation of Mrs. Brinkman's instructions."

The record abundantly shows, without contradiction, that neither Mr. Brinkman nor Mrs. Brinkman made or authorized any request to have the stock reissued in the name of J. George Brinkman. Culbertson alone

knew of this matter, and explained the circumstances under which he made the request as follows: Referring to his letter to Mr. Peterson, dated May 7, 1921, in which the request was made to have the stock issued in the name of J. George Brinkman, the witness said: "I wrote that letter; I consciously wrote such a letter, but the stenographer either made an error or I made it in dictating it, because I know that the stock was to be transferred to Mrs. Brinkman. I know that I had never had any instructions to change that manner of handling the transaction. I know that there had never been the slightest discussion about handling it in any other way, and I can only explain the letter reading J. George Brinkman instead of Pauline W. Brinkman, by saying that I have been very, very busy, the volume of our correspondence with the Dallas office was very heavy, and often, in going over this mail in the evening before it went out, I would not read it before signing it, else I would surely have caught the misstatement, for such it certainly was. I did not discover the error for some time, when the contents of the letter was shown to me or told me I immediately realized that it was wrong, without any suggestion or remarks from anyone else on the subject, and so advised them at the time, and have so advised everyone else since that time who has asked me about it. For that reason it is very strongly impressed upon my mind that I did not make the error in the letter you refer to. I have just stated to you that after receiving this stock from Mrs. Brinkman, that I had not received any instructions from her contrary to that, asking me to have the stock transferred to her and in her name. My letter to Mr. Peterson asking that the stock be transferred to J. George Brinkman was a mistake."

This uncontradicted testimony fully vindicates the correctness of our finding.

■ 3. In their thirty-fifth assignment appellees say that we erred in holding that the finding of the jury, to the effect that Stewart had no notice of the claim of Mrs. Brinkman prior to the levy of the attachments, was contrary to the undisputed evidence; their contention being that the evidence on this point was in fact disputed.

We do not regard it a fact of any materiality whatever whether Stewart did or did not have notice of the claim of Mrs. Brinkman prior to the levy of the attachment, but, in view of the criticism, we deem it necessary to show that our holding is in harmony with undisputed evidence.

J. George Brinkman testified: "I have already testified that I had a conversation with Mr. Stewart, and in that conversation I advised him that this stock belonged to Mrs. Brinkman. That was prior to March 30th, 1921. I advised Mr. Stewart more than two

years before—in 1919—that I owed Mrs. Brinkman this money."

On April 14, 1921, about one month before the attachments were levied, Brinkman wrote Stewart, among other things, that "Toole having failed to pay interest on his note, there was nothing else to do but to foreclose (on the stock), and that the owner of the stock will hold the Howell Company for any loss sustained by its refusal to transfer the stock and pay the dividends to the present owner." In this letter the name of the then owner of the stock was not given, but it does appear from the letter that the stock had been sold and passed from the hands of Mr. Brinkman and was owned by another. Again Brinkman testified that, prior to the levy of the attachments, Stewart was advised by him that he (Brinkman) did not own the stock, that he had informed him of this fact a number of times.

Stewart did not testify. The above is substantially all the evidence on this point, is uncontradicted, and supports our holding.

Appellees' criticisms of our findings were not justified by anything in the record; their motion for rehearing is overruled.

Overruled.